## HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* CLIFFORD.

No. 383. Argued February 5, 1940.—Decided February 26, 1940.

*Mr. Warner W. Gardner,* with whom *Solicitor General Jackson, Assistant Attorney General Clark,* and *Messrs. Sewall Key, L. W. Post,* and *Richard H. Demuth* were on the brief, for petitioner.

*Mr. Thomas P. Helmey,* with whom *Mr. F. H. Stinchfield* was on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

In 1934 respondent declared himself trustee of certain securities which he owned. All net income from the trust was to be held for the "exclusive benefit" of respondent's wife. The trust was for a term of five years, except that it would terminate earlier on the death of either respondent or his wife. On termination of the trust the entire corpus was to go to respondent, while all "accrued or undistributed net income" and "any proceeds from the investment of such net income" was to be treated as property owned absolutely by the wife. During the continuance of the trust respondent was to pay over to his wife the whole or such part of the net income as he in his "absolute discretion" might determine. And during that period he had full power (a) to exercise all voting powers incident to the trusteed shares of stock; (b) to "sell, exchange, mortgage, or pledge" any of the securities under the declaration of trust "whether as part of the corpus or principal thereof or as investments or proceeds and any income therefrom, upon such terms and for such consideration" as respondent in his "absolute discretion may deem fitting"; (c) to invest "any cash or money in the trust estate or any income therefrom" by loans, secured or unsecured, by deposits in

banks, or by purchase of securities or other personal property "without restriction" because of their "speculative character" or "rate of return" or any "laws pertaining to the investment of trust funds"; (d) to collect all income; (e) to compromise, etc., any claims held by him as trustee; (f) to hold any property in the trust estate in the names of "other persons or in my own name as an individual" except as otherwise provided. Extraordinary cash dividends, stock dividends, proceeds from the sale of unexercised subscription rights, or any enhancement, realized or not, in the value of the securities were to be treated as principal, not income. An exculpatory clause purported to protect him from all losses except those occasioned by his "own wilful and deliberate" breach of duties as trustee. And finally it was provided that neither the principal nor any future or accrued income should be liable for the debts of the wife; and that the wife could not transfer, encumber, or anticipate any interest in the trust or any income therefrom prior to actual payment thereof to her.

It was stipulated that while the "tax effects" of this trust were considered by respondent they were not the "sole consideration" involved in his decision to set it up, as by this and other gifts he intended to give "security and economic independence" to his wife and children. It was also stipulated that respondent's wife had substantial income of her own from other sources; that there was no restriction on her use of the trust income, all of which income was placed in her personal checking account, intermingled with her other funds, and expended by her on herself, her children and relatives; that the trust was not designed to relieve respondent from liability for family or household expenses and that after execution of the trust he paid large sums from his personal funds for such purposes.

Respondent paid a federal gift tax on this transfer. During the year 1934 all income from the trust was dis-

tributed to the wife who included it in her individual return for that year. The Commissioner, however, determined a deficiency in respondent's return for that year on the theory that income from the trust was taxable to him. The Board of Tax Appeals sustained that redetermination. 38 B. T. A. 1532. The Circuit Court of Appeals reversed. 105 F. 2d 586. We granted certiorari because of the importance to the revenue of the use of such short term trusts in the reduction of surtaxes.

Sec. 22 (a) of the Revenue Act of 1934, 48 Stat. 680, includes among "gross income" all "gains, profits, and income derived . . . from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." The broad sweep of this language indicates the purpose of Congress to use the full measure of its taxing power within those definable categories. Cf. *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216. Hence our construction of the statute should be consonant with that purpose. Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme, as the owner of the corpus. See *Blair* v. *Commissioner*, 300 U. S. 5, 12. In absence of more precise standards or guides supplied by statute or appropriate regulations,[1]

---

[1] We have not considered here Art. 166–1 of Treasury Regulations 86 promulgated under § 166 of the 1934 Act and in 1936 amended (T. D. 4629) so as to rest on § 22 (a) also, since the tax in question arose prior to that amendment.

the answer to that question must depend on an analysis of, the terms of the trust and all the circumstances attendant on its creation and operation. And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more [2] by devices which, though valid under state law, are not conclusive so far as § 22 (a) is concerned.

In this case we cannot conclude as a matter of law that respondent ceased to be the owner of the corpus after the trust was created. Rather, the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus by respondent all lead irresistibly to the conclusion that respondent continued to be the owner for purposes of § 22 (a).

So far as his dominion and control were concerned it seems clear that the trust did not effect any substantial change. In substance his control over the corpus was in all essential respects the same after the trust was created, as before. The wide powers which he retained included for all practical purposes most of the control which he as an individual would have. There were, we may assume, exceptions, such as his disability to make a gift of the corpus to others during the term of the trust and to make loans to himself. But this dilution in his control would seem to be insignificant and immaterial, since control over investment remained. If it be said that such control is the type of dominion exercised by any trustee, the answer is simple. We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect

[2] See Paul, The Background of the Revenue Act of 1937, 5 Univ. Chic. L. Rev. 41.

any substantial change in his economic position. It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship respondent retained the substance of full enjoyment of all the rights which previously he had in the property. That might not be true if only strictly legal rights were considered. But when the benefits flowing to him indirectly through the wife are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had. To exclude from the aggregate those indirect benefits would be to deprive § 22 (a) of considerable vitality and to treat as immaterial what may be highly relevant considerations in the creation of such family trusts. For where the head of the household has income in excess of normal needs, it may well make but little difference to him (except income-tax-wise) where portions of that income are routed—so long as it stays in the family group. In those circumstances the all-important factor might be retention by him of control over the principal. With that control in his hands he would keep direct command over all that he needed to remain in substantially the same financial situation as before. Our point here is that no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant to the question of ownership and are appropriate foundations for findings on that issue. Thus, where, as in this case, the benefits directly or indirectly retained blend so imperceptibly with the normal concepts of full ownership, we cannot say that the triers of fact committed reversible error when they found that the husband was the owner of the corpus for the purposes of § 22 (a). To hold otherwise would be to treat the wife as a complete stranger; to let mere formalism obscure

the normal consequences of family solidarity; and to force concepts of ownership to be fashioned out of legal niceties which may have little or no significance in such household arrangements.

The bundle of rights which he retained was so substantial that respondent cannot be heard to complain that he is the "victim of despotic power when for the purpose of taxation he is treated as owner altogether." See *DuPont* v. *Commissioner,* 289 U. S. 685, 689.

We should add that liability under § 22 (a) is not foreclosed by reason of the fact that Congress made specific provision in § 166 for revocable trusts, but failed to adopt the Treasury recommendation in 1934, *Helvering* v. *Wood, post,* p. 344, that similar specific treatment should be accorded income from short term trusts. Such choice, while relevant to the scope of § 166, *Helvering* v. *Wood, supra,* cannot be said to have subtracted from § 22 (a) what was already there. Rather, on this evidence it must be assumed that the choice was between a generalized treatment under § 22 (a) or specific treatment under a separate provision [3] (such as was accorded revocable trusts under § 166); not between taxing or not taxing grantors of short term trusts. In view of the broad and sweeping language of § 22 (a), a specific provision covering short term trusts might well do no more than to carve out of § 22 (a) a defined group of cases to which a rule of thumb

---

[3] As to the disadvantage of a specific statutory formula over more generalized treatment see Vol. I, Report, Income Tax Codification Committee (1936), a committee appointed by the Chancellor of the Exchequer in 1927. In discussing revocable settlements the Committee stated, p. 298:

"This and the three following clauses reproduce section 20 of the Finance Act, 1922, an enactment which has been the subject of much litigation, is unsatisfactory in many respects, and is plainly inadequate to fulfil the apparent intention to prevent avoidance of liability to tax by revocable dispositions of income or other devices. We think the matter one which is worthy of the attention of Parliament."

would be applied. The failure of Congress to adopt any such rule of thumb for that type of trust must be taken to do no more than to leave to the triers of fact the initial determination of whether or not on the facts of each case the grantor remains the owner for purposes of § 22 (a).

In view of this result we need not examine the contention that the trust device falls within the rule of *Lucas* v. *Earl*, 281 U. S. 111 and *Burnet* v. *Leininger*, 285 U. S. 136, relating to the assignment of future income; or that respondent is liable under § 166, taxing grantors on the income of revocable trusts.

The judgment of the Circuit Court of Appeals is reversed and that of the Board of Tax Appeals is affirmed.

*Reversed.*

MR. JUSTICE ROBERTS, dissenting:

I think the judgment should be affirmed.

The decision of the court disregards the fundamental principle that legislation is not the function of the judiciary but of Congress.

In every revenue act from that of 1916 to the one now in force a distinction has been made between income of individuals and income from property held in trust.[1] It has been the practice to define income of individuals, and, in separate sections, under the heading "Estates and Trusts," to provide that the tax imposed upon individuals shall apply to the income of estates or of any kind

---

[1] Revenue Act of 1916, 39 Stat. 756, § 2 (a) (b); Revenue Act of 1918, 40 Stat. 1057, § 213 (a), § 219; Revenue Act of 1921, 42 Stat. 227, § 213 (a), § 219; Revenue Act of 1924, 43 Stat. 253, § 213 (a), § 219; Revenue Act of 1926, 44 Stat. 9, § 213 (a), § 219; Revenue Act of 1928, 45 Stat. 791, § 22 (a), §§ 161 to 169, incl.; Revenue Act of 1932, 47 Stat. 169, § 22 (a), §§ 161 to 169 incl.; Revenue Act of 1934, 48 Stat. 680, § 22 (a), §§ 161 to 167, incl.; Revenue Act of 1936, 49 Stat. 1648, § 22 (a), §§ 161 to 167, incl.

of property held in trust. A trust is a separate taxable entity. The trust here in question is a true trust.

While the earlier acts were in force creators of trusts reserved power to repossess the trust corpus. It became common also to establish trusts under which, at the grantor's discretion, all or part of the income might be paid to him, and to set up trusts to pay life insurance premiums upon policies on the grantor's life. The situation was analogous to that now presented. The Treasury, instead of asking this court, under the guise of construction, to amend the act, went to Congress for new legislation. Congress provided, by § 219 (g) (h) of the Revenue Act of 1924, that if the grantor set up such a life insurance trust, or one under which he could direct the payment of the trust income to himself, or had the power to revest the principal in himself *during any taxable year,* the income of the trust, for the taxable year, was to be treated as his.[2]

After the adoption of these amendments taxpayers resorted to the creation of revocable trusts with a provision that more than a year's notice of revocation should be necessary to termination. Such a trust was held not to be within the terms of § 219 (g) of the Revenue Act of 1924, because not revocable within the taxable year.[3]

Again, without seeking amendment in the guise of construction from this court, the Treasury applied to Congress, which met the situation by adopting § 166 of the Revenue Act of 1934, which provided that, in the case of a trust under which the grantor reserved the power *at*

[2] See *Corliss* v. *Bowers*, 281 U. S. 376; *Burnet* v. *Wells*, 289 U. S. 670.

[3] *Lewis* v. *White*, 56 F. 2d 390; 61 F. 2d 1046; *Langley* v. *Commissioner*, 61 F. 2d 796; *Commissioner* v. *Grosvenor*, 85 F. 2d 2; *Faber* v. *United States*, 1 F. Supp. 859.

*any time* to revest the corpus in himself, the income of the trust should be considered that of the grantor.

The Treasury had asked that there should also be included in that act a provision taxing to the grantor income from short term trusts. After the House Ways and Means Committee had rendered a report on the proposed bill, the Treasury,–upon examination of the report, submitted a statement to the Committee containing recommendations for additional provisions; amongst others, the following: "(6) The income from short-term trusts and trusts which are revocable by the creator at the expiration of a short period after notice by him should be made taxable to the creator of the trust." Congress adopted an amendment to cover the one situation but did not accept the Treasury's recommendation as to the other.[4] The statute, as before, clearly provided that the income from a short term irrevocable trust was taxable to the trust, or the beneficiary, and not to the grantor.

The regulations under § 166 of the Act of 1932 contained no suggestion that term trusts were taxable to the creator though, if the petitioner is right, they would be equally so under that act as under later ones. Thus though the Treasury realized that irrevocable short term trusts did not fall within the scope of § 166, instead of going to Congress for amendment of the law it comes here with a plea for interpretation which is in effect such amendment.

Its claim, in support of this effort, that a reversionary interest in the grantor is a "power to revest" the corpus within the meaning of § 166 so as to render the income taxable to the grantor is plainly untenable.[5] That theory

---

[4] Hearings on H. R. 7835, 73d Cong., 2d Sess., p. 151; H. Rep. No. 1385, 73d Cong., 2d Sess., p. 24.

[5] *United States* v. *First National Bank*, 74 F. 2d 360; *Corning* v. *Commissioner*, 104 F. 2d 329.

was first advanced in a regulation issued under the 1934 act,[6] but was abandoned March 7, 1936, when the regulation was revised to read substantially in its present form.[7] The Board of Tax Appeals held a possibility of reverter is not the "power to revest" described in § 166.[8] The petitioner acquiesced in the decision.[9] The Treasury thereafter ruled that a grantor was not taxable on the income of a trust where he had retained a reversionary interest.[10]

I think it clear that the administrative interpretation has not been consistent and that reënactment of § 166 is, therefore, not a ratification by Congress of the present construction.

The revised regulations indicating that in some circumstances the separate taxability of the trust may be ignored are said to rest on § 166, and also on § 22 (a) which defines income. The regulation is not only without support in the statute but contrary to the entire statutory scheme and, as it now stands, is vague and meaningless, as respects the taxability to the grantor of income from an irrevocable term trust.

To construe either § 166 or § 22 (a) of the statute as justifying taxation of the income to respondent in this case is, in my judgment, to write into the statute what is not there and what Congress has omitted to place there.

If judges were members of the legislature they might well vote to amend the act so as to tax such income in order to frustrate avoidance of tax but, as judges, they exercise a very different function. They ought to read the act to cover nothing more than Congress has specified.

---

[6] Regulations 86, Art. 166–1.

[7] T. D. 4629, C. B. XV–1, 140.

[8] Downs v. Commissioner, 36 B. T. A. 1129.

[9] C. B. 1938–1, p. 9.

[10] I. T. 3238, C. B. XVII–2, p. 204.

Courts ought not to stop loopholes in an act at the behest of the Government, nor relieve from what they deem a harsh provision plainly stated, at the behest of the taxpayer. Relief in either case should be sought in another quarter.

No such dictum as that Congress has in the income tax law attempted to exercise its power to the fullest extent will justify the extension of a plain provision to an object of taxation not embraced within it. If the contrary were true, the courts might supply whatever they considered a deficiency in the sweep of a taxing act. I cannot construe the court's opinion as attempting less.

The fact that the petitioner is in truth asking us to legislate in this case is evident from the form of the existing regulation and from the argument presented. The important portion of the regulation reads as follows: "In determining whether the grantor is in substance the owner of the corpus, the Act has its own standard, which is a substantial one, dependent neither on the niceties of the particular conveyancing device used, nor on the technical description which the law of property gives to the estate or interest transferred to the trustees or beneficiaries of the trust. In that determination, among the material factors are: The fact that the corpus is to be returned to the grantor after a specific term; the fact that the corpus is or may be administered in the interest of the grantor; the fact that the anticipated income is being appropriated in advance for the customary expenditures of the grantor or those which he would ordinarily and naturally make; and any other circumstances bearing on the impermanence and indefiniteness with which the grantor has parted with the substantial incidents of ownership in the corpus."

In his brief the petitioner says:

"On the other hand, the income of a long term irrevocable trust which committed the possession and control

of the corpus to an independent trustee *would not likely* be taxed to the settlor merely because of a reversionary interest. The question here, as in many other tax problems, *is simply one of degree.* The grantor's liability to tax must depend upon whether he retains so many of the attributes of ownership as to require that he be treated as the owner for tax purposes, or whether he has given up the substance of his dominion and control over the trust property.

"Under these circumstances, the question of *precisely where the line should be drawn* between those irrevocable trusts which deprive the grantor of command over the trust property and those which leave in him the practical equivalent of ownership is, in our view, *a matter peculiarly for the judgment of the agency charged with the administration of the tax law.*" (Italics supplied.)

It is not our function to draw any such line as the argument suggests. That is the prerogative of Congress. As far back as 1922, Parliament amended the British Income Tax Act, so that there would be no dispute as to what short term trust income should be taxable to the grantor, by making taxable to him any income which, by virtue of any disposition, is payable to, or applicable for the benefit of, any other person for a period which cannot exceed six years.[11]

If some short term trusts are to be treated as nonexistent for income tax purposes, it is for Congress to specify them.

MR. JUSTICE McREYNOLDS joins in this opinion.

---

[11] 12 and 13 Geo. 5, ch. 17, § 20, L. R. Statutes, Vol. 60, p. 373. Though the provision has been thought unsatisfactory, the suggestion made for improvement is that the matter be brought before Parliament for action.