FRANK G. HOOVER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96104. Promulgated September 27, 1940.

*Albert B. Arbaugh, Esq., Paul E. Shorb, Esq.,* and *Marion P. Wormhoudt, Esq.,* for the petitioner.
*T. F. Callahan, Esq.,* and *W. W. Kerr, Esq.,* for the respondent.

790

OPINION.

OPPER: The correctness of respondent's inclusion in petitioner's income for the years 1935 and 1936 of the income of a trust created by him is the first contested issue. Originally respondent's action was predicated only upon sections 166 and 167, Revenue Act of 1934. The additional question of the applicability of section 22, as adjudicated in *Helvering* v. *Clifford*, 309 U. S. 331, has, however, been properly put in issue as the result of subsequent proceedings and is also open for consideration. *Herbert W. Hoover*, 42 B. T. A. 289.

For convenience, the taxability to petitioner of the trust income for the year 1936 will be considered first. In that year the grantor had every power and every economic interest which inured to the petitioners in *Herbert W. Hoover, supra*, and *George H. Deuble*, 42 B. T. A. 277. The circumstances are indistinguishable. On the authority of those cases the determination as to that year must be in favor of respondent.

Turning to the year 1935 we find one distinction in the facts. On the significance of that distinction may depend whether the petitioner is also taxable on the 1935 income. The provision of the trust indenture which permitted the petitioner to substitute trustees was apparently inserted by him by means of an addition dated December 26,

1935. Prior to that time this authority was not the subject of any express provision of the trust indenture. Hence it may be argued that as to the year 1935 the doctrine of *Helvering* v. *Clifford*, on the authority of which the *Hoover* and *Deuble* cases were decided, is inapplicable.

Omitting the power to substitute trustees, petitioner had still contrived to retain in himself "so long as I live the right to instruct the trustee as to any change in such investment both as to principal fund as well as the income thereof that may not be distributed \* \* \*."; "to vote or direct the voting of the stock covered by this trusteeship"; "the trustor himself during his lifetime more or less directing investments"; to obtain the reversion of the corpus on January 1, 1936, unless otherwise directed by him; and, in the meantime, to have the income remain in the family and be paid to petitioner's wife, or if the wife had died to be paid over to trusts established by petitioner for the benefit of his children in his will. The "principal investment" of the trust was stock of the company in which petitioner was "actively interested."

We must compare these aspects of the present controversy with the substance of the Supreme Court's conclusion in *Helvering* v. *Clifford*, *supra*, to determine whether this proceeding comes within the principle of that case. The *Clifford* opinion had this to say of the grantor's relationship to the trust, the emphasis being ours:

\* \* \* So far as his dominion and control were concerned it seems clear that the trust did not affect any substantial change. In substance his control over the corpus was in all essential respects the same after the trust was created as before. The wide powers which he retained included for all practical purposes most of the control which he as an individual would have. There were, we may assume, exceptions such as his disability to make a gift of the corpus to others during the term of the trust and to make loans to himself. But this dilution in his control would seem to be insignificant and immaterial, *since control over investment remained.* If it be said that such control is the type of dominion exercised by any trustee, the answer is simple. We have at best a temporary reallocation of income within an intimate family group. *Since the income remains in the family and since the husband retains control over the investment he has rather complete assurance that the trust will not effect any substantial change in his economic position* \* \* \*. That might not be true if only strictly legal rights were considered. But when the benefits flowing to him indirectly through the wife are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had. \* \* \* For where the head of the household has income in excess of normal needs it may well make but little difference to him (except income tax-wise) where portions of that income are routed—so long as it stays in the family group. *In those circumstances the all important factor might be retention by him of control over the principal.* \* \* \*

The bundle of rights which he retained was so substantial that respondent can not be heard to complain that he is the "victim of despotic power when for the purpose of taxation he is treated as owner altogether."

Applying this language to the facts now before us, we must ask which of the attributes of ownership included in the bundle of rights which petitioner retained are absent here which were present in *Helvering* v. *Clifford, supra*. Petitioner could not alienate the trust corpus. Neither could he in the *Clifford* case. He perhaps was foreclosed from requiring the trustee to invest in loans to himself, although that is by no means clear. But so he was in the *Clifford* case. He is not entitled to receive the income from the trust in person, but obtains its economic benefits only indirectly through his wife. But that was also true in the *Clifford* case. He does control the form and manner of the investment of both principal and undistributed income. And he does remain in a position to participate in the affairs of the business in which he is actively interested, a prerogative which proceeds from the retained equivalent of ownership of his interest in that enterprise. This is an attribute of proprietorship frequently of greater significance than the right to receive income. When we combine it with the power to force the retention of that investment and the "benefits flowing to him indirectly through the wife" we can not avoid the conclusion that "With that control in his hands he would keep direct command over all that he needed to remain in substantially the same financial situation as before." True, petitioner was not himself the trustee, as Clifford was. But what significant powers of enjoyment or control were vested in Clifford as trustee which the grantor here did not have as an individual? We think that petitioner's liability to tax on the trust income for the year 1935 follows directly from the principle of *Helvering* v. *Clifford, supra*.

What we have said, however, applies only to the income from the principal of the trust which petitioner established. As to the income from the fund which represented accumulated income, the fund which was in fact withdrawn by the beneficiary on September 2, 1935, the situation is indistinguishable from that aspect of *Herbert W. Hoover, supra*, which involved income from investments properly withdrawn during the tax year by the beneficiaries. On the authority of that decision respondent's determination with respect to the income from the withdrawn property is disapproved.

The facts stipulated with respect to the second issue merely show that petitioner paid certain amounts to investment counsel during the years in question. There is no showing that petitioner was engaged in any trade or business or that the claimed expenses were incurred in connection therewith. In the absence of such evidence this issue must be decided in favor of respondent. See *Deputy* v. *duPont*, 308 U. S. 488.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

VAN FOSSAN, dissenting: I am unable to agree with the majority that as to the year 1935 the present case is governed by *Helvering* v. *Clifford*, 309 U. S. 331. There is a basic difference in the facts. Clifford was both grantor and trustee of the trust with all the powers that flowed from the merger of the two personalities. In the instant case in 1935, Hoover was not and could not become trustee. The only powers specifically reserved by him as grantor were to vote the stock and to control any change in the investment of the principal and undistributed income of the trust. In my judgment the reservation of these powers was not such a retention of control as to require us to disregard the trust. *Ellsworth B. Buck*, 41 B. T. A. 99.

MELLOTT agrees with this dissent.