## COMMISSIONER OF INTERNAL REVENUE v. BRANCH.

### No. 3592.

Circuit Court of Appeals, First Circuit.

Oct. 23, 1940.

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner.

Richard Wait, of Boston, Mass. (John Dane, Jr. of Boston, Mass., on the brief), for Claude R. Branch.

Before MAGRUDER, and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

In this case the Board of Tax Appeals has held that the 1934 income of a certain trust is not taxable to the grantor. On petition for review the Commissioner's argument has centered on Section 22(a) of the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 669; we are asked to press on beyond Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, and to apply the rationale of that striking case to a much weaker set of facts.

Claude R. Branch, the taxpayer herein, created the trust in 1928, shortly after his marriage. He transferred certain securities to himself and two other individuals as trustees. The entire net income as it accrued was payable quarterly to Hope S. Branch, the wife of the grantor, during her lifetime and for her separate use, "free whenever she shall be covert from all control and engagements of her husband." The trust was to continue during the life of Mrs. Branch, and upon her death was to revert to the grantor if he survived her; otherwise, the trust property was to be held for the benefit of such persons as Mrs. Branch might appoint by a general testamentary power, and in default of appointment there were elaborate remainders to the grantor's descendants.

The trust was expressly declared to be irrevocable by the grantor. On the other hand, it was provided that Mrs. Branch might by formal instrument, at any time during the joint lives of herself and the grantor, revoke the foregoing uses and trusts as to all or any part or parts of the trust estate, and appoint the same to other uses in whole or in part, and vest the same in the old trustees or new trustees upon other trusts, powers, discretions and limitations "or in herself, or in any other person or persons, freed and discharged of all trusts, as she may see fit."

At the time the trust was created, the securities in question were under pledge to a trust company, together with other securities, as collateral for certain promissory notes in the sum of $400,000 theretofore executed by the grantor. The trust agreement empowered the grantor to repledge these securities to the trust company to secure the payment of his individual renewal notes. However, the grantor covenanted to reimburse the trust estate for losses resulting from resort to the trust property for payment of his individual notes, and the trustees were authorized to determine finally any liability of the grantor on account of this covenant. The record is barren of any suggestion that the pledge to the bank and the creation of the trust were parts of a single scheme or transaction devised for purposes of tax evasion.

Broad powers were given the trustees to invest and reinvest without regard to the normal restrictions on investment of trust funds. So long as the grantor should remain a trustee he was empowered alone and without the concurrence of his co-trustees to exercise these powers of investment and rights of conversion, exchange or subscription in connection with any of the securities in the trust. The other trustees were absolved from liability for any losses resulting from such acts of the grantor alone.

The trustees had discretionary powers of sale, lease, partition and exchange of trust property; to give options to purchase or lease; to sell for cash or on credit; to purchase from or sell to the grantor; to borrow money for the purpose of purchasing any investments which they might deem advisable and to pledge or mortgage the trust estate to secure such loans. These powers were exercisable by the grantor alone so long as he should remain a trustee, without the concurrence of his co-trustees, who were absolved from liability for losses in connection therewith. Also, the trustees had power to vote any stock held in trust; to deposit stocks in voting trusts; and to assent or otherwise act with respect to reorganization of companies in which stocks were held. However, the last-mentioned powers could not be exercised by Mr. Branch alone, unless the other trustees delegated their powers to him, as they were authorized to do.

Power was reserved in the grantor to fill vacancies in the trustees and to appoint additional trustees. There was a general provision absolving each trustee from liability for any losses which should occur "except by his own wilful act, neglect or default."

Since the creation of the trust the grantor has at no time received any part of the income. He has continued throughout to pay for the maintenance and support of his wife. Mrs. Branch, during 1934 and all other years prior thereto, has used the income

from the trust estate for whatever purposes she desired and has applied no part of it to the payment of premiums upon policies of insurance on the life of the grantor. The trustees, the grantor and his wife, have at all times consistently treated the income from the trust estate as taxable to the wife alone. In 1934, for the first time, the Commissioner asserted that the income was taxable to the grantor.

The sole ground for the Commissioner's claim, as set forth in the deficiency letter, was that the trust was a revocable trust under Section 166 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code § 166, because under the agreement the corpus of the trust may revest in the grantor in case he survives his wife. The Board properly held that this argument was untenable. Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796. The Commissioner also contended before the Board that the grantor had in effect a power to revoke the trust, because all he had to do was to default in the payment of his notes, and the bank would thereupon foreclose upon the securities which constituted the trust estate and apply the same to the satisfaction of his private debt. The Board rejected this contention as ignoring the obligation of the grantor to reimburse the trust estate for any losses resulting from such foreclosure. In his brief before us the Commissioner does not renew his contentions with reference to Section 166 but relies only on one of his assignments of error, namely, that the Board erred in holding that the income was not taxable to the grantor under the provisions of Section 22(a).

In common with Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, the grantor in the present case has made himself trustee with broad powers of management, and named his wife as beneficiary. There the correspondence ends. An important feature of the Clifford case was that the trust was of short duration; certiorari was granted "because of the importance to the revenue of the use of such short term trusts in the reduction of surtaxes." 309 U.S. at page 334, 60 S.Ct. at page 556, 84 L.Ed. 788. Here the trust, created at the time of marriage, is at least for the lifetime of the wife, and longer than that if she outlives her husband and exercises her power of appointment. In the Clifford case the corpus would surely revest in the grantor at the end of five years, and

maybe sooner. Here the corpus will revest in the grantor only in the event that he outlives his wife, and even this possibility of reverter is subject to be extinguished if the wife exercises her power to appoint the trust estate to new uses or to terminate the trust and vest the corpus in herself.

Another difference between the two cases may be significant. In the Clifford case the Board had found that in substance the grantor remained owner of the corpus. This the court apparently regarded as a finding of fact, for it said (309 U.S. page 336, 60 S.Ct. page 557, 84 L.Ed. 788): "* * * we cannot say that the triers of fact committed reversible error when they found that the husband was the owner of the corpus for the purposes of § 22(a)." In the case at bar the Board has found that neither the provisions of the trust instrument nor the subsequent acts of the parties make the grantor in substance the present owner of the securities he conveyed to the trust. We think that this conclusion, whether one of fact or law, is right.

Helvering v. Clifford rests on its particular facts, as the court was careful to say. We do not understand that the case, as a general proposition, obliterates the separate legal personality of the wife for purposes of determining the gross income of the husband under Section 22(a). Where the grantor has stripped himself of all command over the income for an indefinite period, and in all probability, under the terms of the trust instrument, will never regain beneficial ownership of the corpus, there seems to be no statutory basis for treating the income as that of the grantor under Section 22(a) merely because he has made himself trustee with broad power in that capacity to manage the trust estate. See Helvering v. Achelis, 2 Cir., 112 F.2d 929. We do not read the dictum in Helvering v. Fuller, 310 U.S. 69, 76, 60 S.Ct. 784, 84 L.Ed. 1082, as implying the contrary.

No significance attaches to the fact that the securities put into the Branch trust were already pledged to secure an individual debt of the grantor. Mr. Branch could only transfer to the trust what he had—his equity in the securities. It is true, he reserved a nonfiduciary power to pledge the trust securities for his private debt, but this went no further than to continue the pledge which existed when the trust was created, in case the grantor should have occasion to renew the notes held by the pledgee. The exercise of this power might

well prove to be for the benefit of the trust estate by obviating a foreclosure of the securities at the maturity of the original notes. If such foreclosure should eventuate, either at the maturity of the original notes or of the renewal notes, the grantor is personally obligated to reimburse the trust estate.[1] Thus the estate will be intact if the grantor remains solvent. If the trust estate is impaired because of the grantor's subsequent insolvency, this will be attributable, not to any powers of control reserved by the grantor, but to the fact that the trust res at the time of its creation was subject to the infirmity that an outstanding pledge interest was held by third persons.

The income is not being applied in satisfaction of the grantor's legal obligation to support his wife. Therefore Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, offers no support to the position taken by the Commissioner. This point is covered in Shanley v. Bowers, 2 Cir., 81 F.2d 13.

The decision of the Board of Tax Appeals is affirmed.

---

[1] The record does not disclose the value of the securities transferred to the trust nor the value of the grantor's other securities which had been put up as collateral for the same notes. In view of the grantor's covenant to exonerate the trust estate, the pledgee would be obliged, on principles of marshalling, to resort first to the securities not included in the trust estate. For aught that appears in the record, this recourse might itself be sufficient to satisfy the notes, without any impairment of the trust estate. If not, there is still the grantor's personal obligation to reimburse the estate.