Homer E. Black and Albert B. Arbaugh, both of Canton, Ohio (Homer E. Black and Albert B. Arbaugh, both of Canton, Ohio, and Paul E. Shorb and Marion P. Wormhoudt, both of Washington, D. C., on the brief), for petitioner.

Carolyn E. Agger, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Carolyn E. Agger, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SIMONS, MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

On petitions of H. C. Price for review of decisions of the United States Board of Tax Appeals, we must determine whether the income from a trust created by him was properly held taxable to him for 1934, 1935 and 1936, under Section 22(a) of the respective Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Acts, pages 669, 825.

From the findings of fact of the Board of Tax Appeals, it appears that on October 1, 1923, the petitioner transferred in trust 250 shares of common stock of the Hoover Company, in which he was actively interested, to a Canton, Ohio, bank as trustee for the benefit of his adopted daughter, who

## PRICE v. COMMISSIONER OF INTERNAL REVENUE.

No. 8958.

Circuit Court of Appeals, Sixth Circuit.

Nov. 30, 1942.

was then four years old. The trustee was given broad powers of administration over the trust property, including the right to apportion, between corpus and income, money or property coming into its possession, and the right to apportion expenses or losses to principal or income. Subject to reasonable allowances for the support and education of the beneficiary as indicated by petitioner, or after his death by his wife or the personal guardian of the beneficiary, the entire net income of the trust was directed to be accumulated and invested.

Provision was made that, upon attaining the age of 21 years, the beneficiary should receive the net income from the trust during the remainder of her life, unless the principal should be distributed in accordance with the terms of the trust instrument. If, after reaching her majority, the beneficiary should desire to purchase a home, the trustee was authorized to pay her such part of the principal as in its judgment should be so expended. Should the beneficiary marry at a time when neither petitioner nor his wife was living, the trustee was directed to pay her $15,000 as a wedding present in the name of her adoptive parents. Distributions of portions of the principal were to be made to the beneficiary upon her attainment of specified ages, provided she should demonstrate to the trustee capacity for managing such funds distributed to her.

Expressing the desire that the trustee receive reasonable compensation for his services, petitioner provided in the trust indenture that "in view of the fact that investments are substantially determined in this instrument and that the Trustor himself, during his lifetime, shall more or less direct investments, the Trustee's compensation shall not exceed one per cent of the income during the Trustor's lifetime and thereafter not to exceed two per cent of said income."

The petitioner retained the right to instruct the trustee with respect to any change in the principal investment of undistributed income of the trust, and also reserved the right to vote or direct the voting of the common stock constituting the corpus of the trust and to dispose of such voting rights by will.

It was provided that, should the petitioner die while the trust was operative, the trustee would have the power to invest and reinvest both principal and income within its sound discretion; and that, should the beneficiary die before receiving the entire estate, the corpus of the trust estate would revert to the petitioner, or his estate.

The trust was made irrevocable during the years 1923 and 1924, but could be thereafter terminated during any calendar year by notice in writing, given by the petitioner in December of any year preceding the time revocation or modification was to become effective.

On December 30, 1929, the original revocation clause was eliminated by the amendment by petitioner of the terms of the original trust so as to provide that the trust should be irrevocable from January 1, 1930, until January 1, 1933; at which time, if the petitioner were living, the trust would terminate and the corpus revert to him. It was further provided in the amendment that the entire net income for the three-year period should be paid into a trust created simultaneously as the "Dorothy Eleanor Price Income Trust" for the benefit of his adopted daughter. The same bank which served as trustee of the principal trust was nominated and served as trustee of the income trust.

On May 26, 1932, the petitioner extended the principal trust irrevocably until January 1, 1938, requiring the trustee to pay over the entire net income thereof from January 1, 1933, until January 1, 1938, to the Dorothy Eleanor Price Income Trust, with the proviso that if the petitioner were living on January 1, 1938, the trust should terminate and the corpus revert to him.

The petitioner retained no right to revoke the income trust and invested the trustee with broad powers of administration. The trustee was required to pay to the wife of petitioner, or to the personal guardian of the beneficiary during the latter's minority, reasonable amounts indicated by the wife or guardian for the support, maintenance and education of the beneficiary. Provision was made for distribution of all remaining principal of the income trust to the beneficiary when she attained the age of 25 years; and she was vested with testamentary power of disposition should she die before reaching that age. It was provided, however, that should the beneficiary die without will and the principal trust be then not in existence, the income trust estate should revert to petitioner or his estate.

All income of the income trust for the years 1934, 1935 and 1936 was retained and accumulated for the beneficiary by the trustee, and no part thereof was paid to the petitioner. For these three calendar

years, the trustee filed Federal income tax returns for the two respective trust estates, and paid income taxes on the basis of such returns. During the full three-year period involved, the petitioner maintained a North Canton, Ohio, home, in which he and his wife resided. His adopted daughter and beneficiary also resided in that home when she was not attending school.

From the foregoing analysis of the terms of the trusts created by petitioner, it becomes obvious that decision on this review must be resolved upon principles derived from Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, recently discussed by this court in Suhr v. Commissioner of Internal Revenue, 6 Cir., 126 F. 2d 283, 287, 288. There will be no reiteration here of what was said there. Suffice it to say that, in the Suhr' case, the income taxability of the settlor of a long-term trust was the issue presented; while here, the trust to be interpreted is a short-term trust of five years.

It is true that the petitioner did not, as did the trustor in the Clifford case, nominate himself trustee. Moreover, he named a legally incompetent adopted daughter rather than a sui juris wife as beneficiary of the trust. He did not reserve, as did Clifford, absolute discretion as to distribution of the net income of the trust. He reserved to himself no such broad managerial and administrative control, or such broad control of investments as was reserved by Clifford; and, in contradistinction to Clifford's trust, the petitioner did not treat as principal any stock or extra dividends or the enhanced value of the trust securities.

Petitioner did retain, however, the right to vote the trusteed stock and to dispose of such voting rights by will, and to direct the trustee concerning changes in the investment of the corpus of the trust, or its accumulated income. He did retain the right to the undistributed corpus, upon the termination of the trust at the end of a short term; and he would appear to have received the equivalent of the "enjoyment of the economic benefit" held taxable as income in Helvering v. Horst, 311 U.S. 112, 117, 61 S.Ct. 144, 147, 85 L.Ed. 75, 131 A.L.R. 655.

■ Under the doctrine of Helvering v. Clifford, supra, the income from a short-term trust is taxable to the settlor, where he retains the right to reversion of the corpus and where the income from the property placed in trust is retained "within an intimate family group," [309 U.S. 331, 60 S.Ct. 557, 84 L.Ed. 788] even though the settlor fails to retain the right to remove or replace the trustee, to direct investments, or to revoke the trust prior to its fixed short-term termination. Commissioner of Internal Revenue v. Barbour, 2 Cir., 122 F.2d 165. See, also, Helvering v. Elias, 2 Cir., 122 F.2d 171. Cf. Commissioner of Internal Revenue v. Woolley, 2 Cir., 122 F.2d 167.

It was pointed out in Commissioner of Internal Revenue v. Goulder, 6 Cir., 123 F.2d 686, 688, that "the court in the Clifford case cast aside all technical considerations and the legal implications growing out of trust relations and brought within the ambit of Section 22(a) all income to a settlor of a trust where the trust was created to serve as a means for the transference of future income of the settlor to benefit his immediate relative, and where the corpus and income were but temporarily removed from his ownership." Cf. Commissioner of Internal Revenue v. Lamont, 2 Cir., 127 F.2d 875.

In Harrison v. Schaffner, 312 U.S. 579, 583, 61 S.Ct. 759, 762, 85 L.Ed. 1055, the broad statement was made that "income which the donor gives away through the medium of a short term trust created for the benefit of the donee is nevertheless income taxable to the donor."

It could serve no useful purpose to discuss and distinguish cited cases involving long-term trusts, usually for the life of the beneficiary, but these authorities have been examined. Commissioner of Internal Revenue v. Bateman, 1 Cir., 127 F.2d 266; Commissioner of Internal Revenue v. Branch, 1 Cir., 114 F.2d 985, 132 A.L.R. 839; Jones v. Norris, 10 Cir., 122 F.2d 6; Commissioner of Internal Revenue v. Armour, 7 Cir., 125 F.2d 467.

In the last-cited case, the Court of Appeals for the Seventh Circuit pointed to the fact that our court, in its opinions in Altmaier v. Commissioner, 6 Cir., 116 F.2d 162, certiorari denied 312 U.S. 706, 61 S.Ct. 827, 85 L.Ed. 1138, and Commissioner of Internal Revenue v. Central Nat. Bank of Cleveland, 6 Cir., 119 F.2d 470, has construed Helvering v. Horst, supra, as giving additional stress to the "family solidarity" doctrine.

■ Considering the "bundle of rights" retained by the petitioner as settlor in the trust before us for interpretation and re-

garding his beneficence to his adopted daughter through the trust medium as a mere "temporary reallocation of income within an intimate family group," we cannot say that the Board of Tax Appeals committed error in finding that the father was the owner of the corpus of the trust estate for the purposes of taxation under Sec. 22(a) of the Revenue Acts of 1934 and 1936.

The decisions of the Board of Tax Appeals are affirmed.