**BELKNAP v. GLENN, Collector of Internal Revenue.**

No. 648.

District Court, W. D. Kentucky, at Louisville.

June 20, 1944.

632

Squire R. Ogden and Ogden Galphin Tarrant & Street, all of Louisville, Ky., for plaintiff.

Eli H. Brown, III, U. S. Atty., of Louisville, Ky., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, Richard N. Ivins, and Courtnay C. Hamilton, Sp. Assts. to the Atty. Gen., for defendant.

MILLER, District Judge.

This action was brought by the plaintiff, Juliet R. Belknap, to recover income taxes alleged to have been illegally collected by the defendant, Seldon R. Glenn, Collector of Internal Revenue for the District of Kentucky, in the sum of $10,813.17 .with interest for the years 1938, 1939 and 1940.

Under date of April 21, 1921 the plaintiff executed a trust indenture under which she as the settlor transferred to Arthur D. Allen, Jos. H. Scales and Wm. B. Belknap as trustees 1,000 shares of the preferred stock and 500 shares of common stock of the Belknap Hardware and Manufacturing Co. of Louisville, Kentucky, to be held by them under the conditions and limitations therein set out and which were briefly as follows:

1. "Out of the net income from the trust estate the trustees shall pay to each of the following persons, hereinafter called the beneficiaries, each year, so long as she lives, but not beyond the life of the first party, the sum hereinafter provided for her as follows, to-wit:" to her mother $1,500; to two sisters $6,000 and $2,400 respectively; to two cousins $1,500 and $120 respectively; and to two aunts and the survivor of them $2400.

2. The remaining annual income of the trust, if any, was to be paid to the settlor.

3. The trust terminated with the death of the settlor and the property then held in trust thereafter became part of the settlor's estate. The trust also terminated as to each of the beneficiaries at her death before the settlor.

4. Upon the death of any beneficiary the trustees had the right in their discretion to withdraw from the trust property and transfer the same to the settlor, taking care, however, that the property remaining in the trust was ample in value to sustain the annuities to which the surviving beneficiaries were entitled.

5. The trustees were given the power to sell any or all of the trust property and to invest the proceeds in such stocks, bonds or other securities or personal estate of any kind as they deemed advantageous.

6. The trustees were given the power in their discretion to invest such part of the income of the trust estate as they thought proper taking care that there should be available the necessary cash required for the monthly payments to the beneficiaries.

7. Stock dividends were not to become a part of the trust estate either as income or principal but were to be delivered to the settlor as her property.

8. Trustees were to pay the taxes and other proper expenses of the trust out of the gross income of the trust estate, and were to retain as compensation for themselves 3% of such gross income.

9. The settlor had the power at any time to remove any or all of the trustees and to appoint a new trustee or trustees in their stead, and to appoint successors to trustees who might die, resign or cease to act, but such power was to be exercised by deed duly acknowledged as required by the law of Kentucky.

10. Any person appointed trustee, whether by the settlor or by a court of competent jurisdiction must be competent in all things to act in the execution of the trust as fully and effectually as the trustees originally named.

By June 1939 all of the original beneficiaries had died except the sister receiving $6,000 per year, and the cousin receiving $120 per year. By instrument dated June 12, 1939 addressed to the then trustees, the plaintiff provided that after the payment to the remaining beneficiaries "I hereby give, transfer and assign the balance of the net income earned by the trust estate in each calendar year to Mrs. Gwendoleyne Leys Davenport and Basil Davenport in equal shares." This order was made irrevocable during the settlor's lifetime but was to cease to be effective at her death or at the death of the newly named beneficiaries.

The plaintiff reported and paid a tax upon the income received by her during 1938, 1939 and 1940, but did not include income from the trust paid to the beneficiaries. The beneficiaries have likewise paid their respective taxes upon so much of the income from the trust estate as was received by them. The Commissioner took the view that all of the income from the trust estate, regardless of who actually received it from the trustees, was taxable income to the settlor and made the deficiency assessments upon that basis.

The controlling statutory provision is Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22 (a), which defines gross income subject to taxation. The question presented is whether or not income payable to beneficiaries other than the taxpayer under a trust created by the taxpayer falls within that definition. The Commissioner relies upon the ruling laid down by the opinion of the Supreme Court in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 556, 84 L.Ed. 788, and other similar cases which have applied that ruling. In the Clifford case it was held that taxability to the creator of a trust of income flowing from that trust was not to be determined by technical considerations or the niceties of the law of trusts or conveyances but depended upon whether or not the grantor after the trust has been established was still to be considered as the owner of the corpus of the estate; that if in substance his control over the corpus was in all essential respects the same after the trust was created as it was before he in reality retained the full enjoyment of all rights which he previously had in the property and the income from such corpus, even though held in trust, was properly taxable as income to him. But in laying down that doctrine the Supreme Court also specifically said "In absence of more precise standards or guides supplied by statute or appropriate regulations, the answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation" and "that no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant to the question of ownership and are appropriate foundations for findings on that issue." The taxpayer claims that the facts in the Clifford case go far beyond the facts in the present case, making the doctrine in the Clifford case inapplicable to the present situation. Particular reliance is placed by the taxpayer upon the ruling of the Circuit Court of Appeals of this Circuit in Suhr v. Commissioner of Internal Revenue, 126 F.2d 283, where the trust involved was compared very carefully with the trust in the Clifford case and it was held that enough material differences existed ·to prevent the trust in the Suhr case from falling within

the ruling of the Clifford case. The same result was reached by the same court in its recent opinion in Central National Bank of Cleveland v. Commissioner, 6 Cir., 141 F.2d 352. Numerous cases from other circuits have also made similar comparisons and while .recognizing the doctrine of the Clifford case have nevertheless held that the particular. facts before them were such as to withdraw the case from the scope of its ruling. See Commissioner v. Branch, 1 Cir., 114 F.2d 985, 132 A.L.R. 839; Commissioner v. Betts, 7 Cir., 123 F.2d 534; Commissioner v. Jonas, 2 Cir., 122 F.2d 169; Commissioner v. Bateman, 1 Cir., 127 F.2d 266. There are also numerous other cases relied upon by the Commissioner which hold that the particular trust involved falls squarely within the Clifford ruling. See Price v. Commissioner, 6 Cir., 132 F.2d 95; Downie v. Commissioner, 6 Cir., 133 F.2d 899; Warren v. Commissioner, 6 Cir., 133 F.2d 312, affirming 45 B.T.A. 379; Commissioner v. Buck, 2 Cir., 120 F.2d 775; Whiteley v. Commissioner, 3 Cir., 120 F.2d 782. It is apparent from these various decisions that each case must be decided upon its own particular facts. A dominant, although not decisive, feature in each case appears to be the duration of the trust. In the Clifford case the trust was for 5 years, generally recognized in subsequent decisions as a short-term trust. In the present case the trust is to continue as to the interest of any beneficiary for the joint lives of the beneficiary and the settlor. It has already continued as to two of the beneficiaries for approximately 23 years. Another item of controlling importance appears to be the relationship of the beneficiary to the settlor with particular reference to the family unit and the obligation of the settlor to support such a beneficiary within that economic unit. In the Clifford case the beneficiary was the wife of the creator of the trust to whom the creator owed the obligation of support. In the present case, insofar as the tax years in question are concerned the beneficiaries are a sister, two cousins, a nephew and a wife of another nephew; in no case does the obligation of support exist. Another element of material consideration appears to be the control of the creator over the trustee and the reserved power in the creator to manage the trust either by the terms of the trust instrument or the power over the trustee. In the Clifford trust the settlor named himself trustee and reserved to himself the power to vote the trusteed shares, to exchange, mortgage, or pledge the trust property, to make investments, to compromise claims. and generally broad power of control. In the present case the settlor is not the trustee and in the trust instrument did not retain the power to vote the trusteed shares or to exchange, mortgage or pledge the trust property or to make investments or to compromise any claims or hold property in the trust estate. Although some features are common to both the Clifford trust and to the present trust, yet the facts of the present case fall far short of giving to the creator of the trust the power of control and substantial ownership over the trust property that existed in the Clifford case. After the creation of the present trust the plaintiff was divested of several substantial rights of ownership and had so removed the trust property from her control and management as to make her no longer the substantial owner of so much of the corpus of the estate as produced the income paid to the beneficiaries. The ultimate reversion to the estate of the grantor has no material bearing on the question involved. Helvering v. Wood, 309 U.S. 344, 60 S. Ct. 551, 84 L.Ed. 796. The principle announced by the case of Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, is also not applicable due to the absence of any legal obligation on the part of the settlor to any of the beneficiaries in question. The case is controlled by the general principle established in Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, and by the decisions of this Circuit in Suhr v. Commissioner of Internal Revenue, supra, and Central National Bank v. Commissioner, supra, rather than by the ruling in Helvering v. Clifford, supra, relied upon by the Commissioner.

■■ The Commissioner claims that in any event the income payable to Mrs. Gwendoleyne Davenport and Basil Davenport under the instrument of June 12, 1939 is taxable to the plaintiff under the authority of Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, Helvering v. Eubank, 311 U.S. 122, 61 S. Ct. 149, 85 L.Ed. 81, and Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, which held that the assignment of income payable in the future did not destroy the taxability of such income to

the assignor. However, as was pointed out in Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, and as recognized in each of the three cases above referred to, the principle is not applicable where the transaction in substance vests in the assignee an interest in income producing property, instead of being merely a gift of income from property owned by the donor. The interest acquired by these beneficiaries by the instrument of June 12, 1939 was an interest in the corpus of the trust estate to the same extent as if they had been named in the original trust indenture, and this phase of the case is accordingly controlled by the same considerations as previously discussed, and falls within the ruling of Blair v. Commissioner, supra.

The plaintiff is entitled to judgment as prayed for in the complaint.