Robert A. Emmett v. Commissioner.
Emmett v. Commissioner
Docket No. 26765.
United States Tax Court
1952 Tax Ct. Memo LEXIS 343; 11 T.C.M. (CCH) 57; T.C.M. (RIA) 52014; January 25, 1952
Waldo K. Greiner, Esq., 1603 Ford Bldg., Detroit, Mich., and Fred J. Schumann, Esq., for the petitioner. Norment Custis, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined the following deficiencies in petitioner's taxes: INCOME TAX
Year
Deficiency
1941
$16,962.72
1944
18,846.98
1945
13,954.68
1946
5,265.99
1947
14,196.09
INCOME AND VICTORY TAX
1943
46,379.64
The question is whether the income and capital gains of an inter vivos trust created by petitioner *344 in 1938 of which his wife was the life beneficiary are taxable to petitioner. Findings of Fact The stipulated facts are so found and incorporated herein by reference. Petitioner is an individual residing in Oakland County, Michigan. His income tax returns for the years in question were filed with the collector of internal revenue for the district of Michigan. Petitioner was born March 3, 1887. His wife, Ella M. Emmett, was born August 31, 1887. Their children, all living, are Jeanne E. (Thalacker), born September 30, 1911; Robert A., Jr., born October 23, 1918; and John P., born January 15, 1922. There are twelve grandchildren, all living, born in the years 1935 through 1950. On September 1, 1938, petitioner executed a declaration of trust, under which the entire net income was to be paid to his wife Ella, for her life, not less often than semi-annually. Upon her death, provision was made for petitioner's children and grandchildren. In the event all of petitioner's three children should predecease Ella, or survive her but die before thirty, leaving no children or grandchildren surviving, the corpus was to be paid to Ella's estate. This trust will be referred to hereafter *345 as Ella's trust. Petitioner, Arbie O. Thalacker, and Gerald E. Powers were designated as trustees of Ella's trust. In the event of a vacancy, the remaining trustees and Ella, if living, or a majority, could name the successor. If Ella were not living, the majority of the remaining beneficiaries were to have the power she would have had, together with the remaining trustees. In the case of any difference of opinion on any trust matter, the decision of the majority of the trustees was to be binding. During the years here involved, the trustees first named served as trustees. Pursuant to the terms of the instrument establishing Ella's trust, petitioner on October 5, 1938, transferred 9,000 shares of common stock of Detroit Rex Products Company to the trust. The name of the Detroit Rex Products Company was changed in 1943 to Detrex Corporation and it is hereafter referred to as Detrex. Petitioner also transferred to Ella's trust 18 per cent of the outstanding beneficial interest in a trust hereinafter referred to as the Bell Trust. On December 31, 1947, the corpus of Ella's trust was composed as follows: $2,259.08 Cash; 18 per cent of the beneficial interest in the Bell Trust; *346 42,300 Detrex common: 459 Detrex preferred. The increase in Detrex common resulted from a stock split subsequent to 1938. The cash was a part of a capital distribution from the Bell Trust and the preferred stock was either part of such capital distribution or purchased out of the proceeds of such distributions from the Bell Trust. Certificates of all stock held by Ella's trust were issued in the names of the trustees. Petitioner created the trust for Ella because he wanted her to have a separate income which he hoped would give her a sense of independence and security. He also wanted outside assistance in managing the trust for Ella. The idea of the trust was first discussed in 1928, but the final decision to create it crystallized during a three-months hospitalization of petitioner in 1937. The instrument was drawn by a Detroit law firm after discussion with petitioner's son-in-law, Arbie O. Thalacker, who was also an attorney and who became one of the trustees. The other trustee, Powers, was a business associate of long standing with petitioner who had experience in financial matters. Powers was an officer of Detrex and had often assisted petitioner and Ella with financial *347 problems. On or about March 15, 1939, petitioner filed a gift tax return for 1938 showing as a gift from petitioner to the trustees of Ella's trust the assets originally transferred. Because of the annual exclusion and specific exemption there was no net taxable gift. Detrex was incorporated in 1925 in Michigan. Its business was the manufacture and sale of machinery and materials for cleaning metals. Just prior to the creation of Ella's trust petitioner owned 70 per cent of Detrex common stock. Powers and two others each owned about 10 per cent. Petitioner was president. He was also a director along with Powers and the other two stockholders. In 1939 Thalacker became a director. A sixth director was added in 1945. The corporate decisions of Detrex were arrived at by informal meetings of the directors. These decisions were not controlled or dictated by petitioner and his recommendations were often not followed by the board. Detrex paid no dividends on its common stock for an eleven-year period prior to 1947 and until the latter year the income of Ella's trust was received exclusively from the interest of that trust in the Bell Trust. After 1946 the income of Ella's trust was *348 received from Detrex. The Bell Trust had been established April 4, 1933 with James H. Bell of Philadelphia, Pennsylvania as trustee. The corpus of the Bell Trust consisted of patents and patent applications and its income arose chiefly from that source. Almost 70 per cent of the income of the Bell Trust came from payments made to it by Detrex. In 1938 Solvent Machine Company, a Michigan corporation, became successor trustee to James H. Bell. On July 1, 1944, Solvent Machine Company, as trustee of the Bell Trust, sold to Detrex the United States Letters Patent owned by the Bell Trust for $500,000, payable in installments, partly in cash and partly in preferred stock of Detrex. The share of Ella's trust in the proceeds of this sale was 18 per cent. When Ella's trust was created petitioner held approximately a 70 per cent beneficial interest in the Bell Trust. After Ella's trust was set up petitioner retained a 52 per cent beneficial interest in the Bell Trust. Petitioner was also a majority stockholder of Solvent Machine Company. There was little need for keeping voluminous or detailed books in connection with the administration of Ella's trust which had but two sources of *349 income. The books that were kept accurately reflected the income, expenses, and disbursements of the trust. The trustees of Ella's trust were in almost constant contact with each other because of their association in business and it was not necessary for them to call formal meetings as trustees for the conduct of the trust business. In making important decisions as to the investment and management of trust funds, especially the proceeds of the patent sale received from the Bell Trust, petitioner sometimes was overruled by the other trustees. During the years 1941 to 1947 the trustees of Ella's trust paid over to her the following sums as income: 1941
$25,560.00
1942
45,000.00
1943
31,500.00
1944
15,706.80
1945
9,195.00
1946
2,840.56
1947
20,133.00
Ella included in her individual income tax returns for those years the net income so distributed to her. In the years 1945 to 1947, the trustees of Ella's trust filed income tax returns and paid the income tax on the following net long term capital gains: 1944
$ 8,867.52
1945
11,084.40
1946
6,650.65 These capital gains resulted from the sale of the patents by the Bell Trust in 1944, *350 and the installments paid on the purchase price, which were passed on to the beneficiaries of the Bell Trust. No part of the trust assets of Ella's trust was ever loaned to petitioner nor did the trust ever buy anything from him or sell any of its assets to him. Ella's trust never made any payments on account of petitioner's obligations nor was the trust corpus ever invaded for the support and maintenance of Ella. During the years 1941 through 1947 Ella expended sums for some of the family expenses of herself and petitioner which ranged in amount from $2,471.42 in 1946 to $4,518.53 in 1941, and totalled $26,011.81 for the seven-year period. Such expenses included a portion of the food bills, clothing, public utility charges, medical charges, and similar items. The checks for these items were drawn by Ella personally on her own bank account. She kept her check book at home and she herself reconciled the check book balances to the bank's statements. Petitioner never asked his wife to pay these bills. Neither at the time Ella's trust was created nor at any other time was there any arrangement or understanding between petitioner and his wife that she would pay any part of their family *351 expenses. Any such payments were made voluntarily by her. She felt that she could spend the money in any way she cared to and she did so. During these same years, 1941 through 1947, petitioner spent his own funds for similar family expenses of himself and wife in amounts ranging annually from $3,262.03 to $8,228.48, and totalling $41,664.05. During the same period petitioner paid directly to his wife as partial reimbursement for the moneys spent by her for family expenses additional sums which totalled $14,930.74. During these same years petitioner expended from his own funds for the purchase of joint assets for himself and wife (after the deduction of any joint funds used in such purchases) the total amount of $103,285. This sum included payments made by petitioner on the mortgages on their jointly owned farm and Florida home, on both of which mortgages they were jointly obligated. In these years petitioner also spent a total of $40,256.64 of his funds in the maintenance and operation of properties owned jointly by himself and wife. In addition, during these same years, petitioner expended a total of $27,414.12 for purchases made by him for his wife individually which included *352 real estate, stocks and other securities, jewelry and some payments made by him on her individual income taxes. In the statement accompanying the deficiency notice addressed to petitioner, respondent explained as follows: "It is held that ordinary income in the amounts of $25,253.90, $45,528.29, $31,639.53, $15,713.45, $10,135.76, $3,547.29 and $20,123.00 for the years 1941 to 1947, respectively, and capital gain in the amounts of $8,867.52, $11,218.90 and $6,650.65 for the years 1944 to 1946, respectively, distributed by a trust created by you, with your wife, Ella M. Emmett, as life beneficiary, is properly taxable to you under the provisions of Section 22 (a) and/or Section 166 and 167 of the Internal Revenue Code." Opinion Respondent seeks to tax the income of Ella's trust to petitioner under the broad terms of section 22 (a)of the Internal Revenue Code. In so doing he frankly admits that "This case is somewhat removed from the Clifford doctrine, Helvering v. Clifford, (1940) 309 U.S. 331, * * * inasmuch as the taxpayer did not reserve to himself any significant rights, powers or control over the trust corpus *353 or income by the terms of the trust indenture, and he had no immediate rights of reversion." Nevertheless, respondent maintains that if we scrutinize carefully all the circumstances attendant on the creation and operation of the trust we must conclude that petitioner has simply multiplied his economic unit by two and that an "agreement with his wife insured him that the disbursements would be used for his own economic benefit within the single family unit." We have given all of the facts of record the careful scrutiny which cases of this character require, but we are unable to agree with the conclusion reached by respondent. In large part respondent's conclusion rests on his claim that petitioner created Ella's trust only after she had orally agreed that she would use the trust disbursements to meet family expenses. In our opinion, the record does not support this claim, and we have found as a fact that no such agreement existed between Ella and petitioner. She considered the payments made to her by the trust to be her own funds and whatever uses she put them to were determined by her without interference on the part of petitioner. True, she paid some of the household expenses *354 with the funds, but she was not bound to do so and to a large extent was reimbursed by petitioner for such expenditures. In this respect the facts of this case closely parallel William P. Anderson, 8 T.C. 921, where we held the trust income was not taxable to petitioner husband. See also George F. Booth, 3 T.C. 605. With the elimination of the fact of Ella's agreement to pay the family expenses from the trust income, little is left of respondent's case. He relies on petitioner's dominant interest in Detrex and Solvent Machine Company which, it is argued, gave petitioner such control over the sources of income to Ella's trust as to amount to control of the trust. On this point the argument is tenuous at best. After his gifts to the trust petitioner's interest in Detrex and Solvent Machine Company amounted to little more than 50 per cent. There is nothing in the record to suggest that petitioner could with this interest either dominate or control the operations of those corporations. Neither is there any evidence of any purpose or attempt on his part to do so. Possibly, in conjunction with the interests held by Ella's trust, that could have been done, but *355 the trust was not itself subject to his control. He was not the sole trustee and the record contains plenty of evidence to show that petitioner by no means held the other trustees under his thumb. Without more, we think this possibility of control is not of controlling importance. It is certainly not enough to justify taxing the trust income to petitioner. Harvey C. Fruehauf, 12 T.C. 681. So far as we can see the record is devoid of facts to give color to this phase of respondent's argument. We take the view that respondent's determination is in error. Decision will be entered for the petitioner.