## COMMISSIONER OF INTERNAL REVENUE v. BARBOUR.

### No. 359.

Circuit Court of Appeals, Second Circuit.

July 26, 1941.

Writ of Certiorari Denied Dec. 8, 1941.

See 62 S.Ct. 361, 86 L.Ed. ——.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Harry Marselli, Sp. Assts. to Atty. Gen., for the Commissioner of Internal Revenue, petitioner.

Charles S. McVeigh, of New York City (George M. Wolfson, Joseph W. Goodwin, John A. Lyon, and Cuthbert B. Caton, all of New York City, of counsel), for Frederick K. Barbour, respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The taxpayer, Frederick K. Barbour, executed a deed of trust on October 29, 1931, wherein he assigned certain shares of corporate stock to Lewis Spencer Morris and Charles S. McVeigh, as trustees, with directions to collect the income therefrom and, after paying out of it the interest accruing upon a loan to him of $100,000 by the Central Hanover Bank & Trust Company secured by the assigned shares, to pay over the net income as follows: 4/10 to the taxpayer's wife, Helen Barbour; 1/10 to each of their three minor children, and 3/10 to her mother. If any beneficiary other than the wife should die during the life of the trust the income payable to such deceased beneficiary should be payable to the wife. The trustees were authorized in their discretion to pay over the net income of any of the children to their mother. Their shares of the net income for the years 1934 and 1935 were thus distributed. The trustees named were given wide powers of investment but the taxpayer reserved no power to revoke or modify the terms of the trust, or to control the trust property or its management. His wife likewise had no such power.

Under the provisions of the trust it was to terminate upon the happening of any of the following events: (1) the death of Helen Barbour; (2) her attainment of the age of 34 years, 11 months and 12 days, which, if she lived, would occur on December 31, 1932; (3) the death of the settlor. It was provided that upon the happening of any of the foregoing three events the trusts should at once terminate and the trustees should pay over the trust property to the grantor, or, if the trusts should have terminated because of the death of the grantor, they should pay over the trust estate as the grantor might by will appoint and, in default of appointment, should pay it over to the grantor's children who survived him, or their heirs.

On March 11, 1932, and December 15, 1934, the taxpayer executed further instruments whereby in the first instrument he extended the duration of the original trust until Helen Barbour should attain the age of 37 years, 11 months and 12 days, which would be on December 31, 1935, and by the second instrument he extended the duration until she should attain the age of 42 years, 11 months and 12 days, which would be on December 31, 1940.

It is apparent from the foregoing that after the first extension made on March 11, 1932, the trust would have a duration of 3 years, 9 months and 20 days, and after the second extension made on December 14, 1934, the trust would have a duration of 6 years and 16 days; in other words,

the income payable during 1934 was derived up to December 15 of that year from a trust for 3 years, 9 months and 20 days, and the income payable during the last 16 days of the year 1934 and during the entire year 1935 was derived from a trust having a duration of 6 years and 16 days.

On November 20, 1934, the taxpayer executed a second deed of trust naming the same trustees as in the first, and upon like terms except as to the years of duration. This trust was to terminate when Helen Barbour attained the age of 41 years, 11 months and 12 days, which would be December 31, 1939. Its duration, therefore, was limited by its terms to 5 years, 1 month and 11 days. But on December 15, 1934, the taxpayer increased the corpus by an assignment to the trustees of additional securities, and by an agreement extended its duration by one year so that it would terminate upon the wife's attainment of the age of 42 years, 11 months and 12 days, which would be on December 31, 1940. Accordingly the term of the second trust would after the extension be 6 years and 16 days. The income payable during 1934 was derived up to December 15, 1934, from a trust for 5 years, 1 month and 11 days and that payable during the last 16 days of the year 1934 and during the entire year 1935 was derived from a trust having a duration of 6 years and 16 days.

The trustees administered the trusts according to their terms and paid the income thereon derived during the years 1934 or 1935 to or for the account of the beneficiaries named therein, but made no payments from such income to the taxpayer.

Helen Barbour used a portion of the income received from the trustees to make an initial payment on February 19, 1935, of $5,208 to the Travelers Insurance Company of a premium on an insurance policy owned by her on the life of the taxpayer.

The Commissioner determined that income from the trusts to the amounts of $92,821.54 for the year 1934, and $131,455.67 for the year 1935, was taxable to the grantor of the trusts. Before the Board of Tax Appeals the Commissioner insisted upon his initial position and made the additional claim that, if all the income of the trusts was not taxable to the grantor, at least the amount of $5,208, which in 1935 the wife of the taxpayer had applied to the payment of the insurance premium, was taxable to him under Section 167 of the

Revenue Act of 1934. The Board of Tax Appeals decided in favor of the taxpayer on both points. We think the decision was wrong as to the first point, and that the whole net income for the years 1934 and 1935 was taxable to the grantor. Such being the case, it will be unnecessary to consider the second point.

We think the case falls within the rule laid down by the Supreme Court in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. That decision seems to rest on the old maxim "one can't have his cake and eat it". But to formulate a predictable rule for the taxation of grantors who set up trusts in their property for short terms and retain the reversion is far from easy. Taxation of the trust income against a grantor who has set up such trusts seems to have required a statute in England. In this country the Treasury sought in vain to obtain legislation taxing such short trusts and defining their limits, but succeeded in its object in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. In that decision the Supreme Court held that a grantor who made himself trustee of a trust for five years, the income of which was payable to his wife, gave himself wide powers of management and investment and retained the ultimate reversion, was taxable on the income. That it is desirable to tax the income of such short trusts to a person who has retained the reversion and kept both capital and income for a close family group seems demonstrable. When once the legal difficulties have been overcome of attributing to a grantor for tax purposes income not his under the state law, some practical rule ought to be devised which will indicate with reasonable certainty what trusts are to be taxed against grantors and will not leave each new set of circumstances to be dealt with as a fresh problem. It would seem reasonable to say that the income of trusts which are not substantially longer than the one in Helvering v. Clifford are to be taxed against the grantor if, he retains the reversion and the income of the property originally in his hands remains "within an intimate family group". Helvering v. Clifford, 309 U.S. at page 335, 60 S.Ct. at page 557, 84 L.Ed. 788. Accordingly the period of 6 years and 16 days (which is the longest period involved here) seems close enough to the five years in Helvering v. Clifford to bring the present case within its intention. We find here the same retention by the taxpayer of the

reversion, and the same "temporary real-location of income within an intimate family group." If the taxpayer intended to part with all substantial control, it is hard to see why he made a succession of short trusts for payment of income to members of his family and retained the ultimate title to the corpus in himself. It is true that the result we reach is less certain than if he had made himself or his wife trustee, but he did appoint his lawyers. It is reasonable to suppose that he felt confident that they would observe his reasonable wishes as to investment and management when he had not only made them trustees but had created trusts in securities which would revert to his possession if he lived beyond the period to which they were limited, and which would pass to his heirs or appointees if he died while the trusts were continuing. While the selection of the grantor or his wife as trustees would beyond a peradventure have resulted in his taxation, we think the appointment of other trustees was not enough to take the case out of the class of trust settlements which Helvering v. Clifford sought to cover. Though the grantor could neither remove the trustees, determine investments, nor revoke the trusts so as to recapture the corpus, the rights of the grantor and his family group in the property remained under the reasoning of Helvering v. Clifford much as they were prior to the settlements. As we said in Commissioner v. Buck, 2 Cir., 120 F.2d 775, 778, decided on June 6, 1941, "the control factor is sufficiently present when the trust is of short duration, as in the Clifford case (because the grantor will soon reacquire complete dominion), even if there are no express reservations of control."

Inasmuch as the mother of Mrs. Barbour did not live in the household or even in the same town as the grantor, it is argued that she ought not to be treated as a member of the "intimate family group". It seems rather more likely that she was properly regarded as a member of such a group but, in any event, the burden was upon the taxpayer to show that the Commissioner was wrong in so treating her and he made no attempt to overcome it.

The order of the Board of Tax Appeals is reversed and the proceeding remanded with instructions to compute the income taxable to the grantor and determine the deficiency in accordance with the views expressed in this opinion.