## McKNIGHT v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12059.

Circuit Court of Appeals, Eighth Circuit.
Nov. 13, 1941.

John W. Windhorst, of Minneapolis, Minn. (John L. Connolly, of St. Paul, Minn., and Leland W. Scott and Fletcher, Dorsey, Barker, Colman & Barber, all of Minneapolis, Minn., on the brief), for petitioner.

L. W. Post, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The question presented by this petition for review is whether the income from a short term trust created by the petitioner in 1934 for the benefit of his wife, was taxable to him under Section 22(a) [1] of the Revenue Acts of 1934, 48 Stat. 686, and 1936, 49 Stat. 1657, 26 U.S.C.A. Int.Rev.Acts, pages 669 and 825. In the belief that the trust income was taxable to the beneficiary, the petitioner did not include it in his federal income tax returns for the years 1935, 1936 and 1937. In 1939, the respondent decided that the trust income was taxable to the petitioner, and assessed deficiencies accordingly. On review, the Board of Tax Appeals affirmed the respondent's determination on the authority of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

Briefly summarized, the facts are as follows: On September 19, 1934, the petitioner, who owned a large number of shares of the capital stock of the Minnesota Mining and Manufacturing Company (hereinafter called the Company) and was the President of the Company, transferred 20,000 shares of the capital stock of the Company to Herbert P. Buetow, as trustee. Buetow was a friend of the petitioner and was the Assistant Treasurer of the Company. The trust agreement provided that the net income from the stock should be paid, during the trust period, to Maude L. McKnight, wife of the petitioner; that the trust should terminate on August 8, 1937, when the beneficiary attained the age of 51 years, but that if either the donor or the beneficiary should die before that time the trust should end; that the trust was irrevocable; and that the trustee should have full and complete control over the trust property, except that he should "not change the securities * * * nor make investment of Trust Funds * * * without the written approval * * *" of the donor. The transfer of the stock was made to the trustee, who kept the certificates of stock in a Company safe to which the petitioner, the trustee and the trustee's private secretary had access. The Board of Directors of the Company, of which the petitioner was a member, voted the stock under proxies procured from the trustee. Dividends on the stock were received by the trustee, and the amount received was immediately paid to the beneficiary. No compensation was paid to the trustee. The trust terminated August 8, 1937, and shortly thereafter the trustee transferred and delivered the stock to the petitioner. The petitioner believed that by creating this trust he would reduce his income taxes, and he, his legal advisers, and the Deputy Commissioner of Internal Revenue, who was informed of the creation of the trust, were of the opinion that the trust income would be taxable to the beneficiary of the trust.

In Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, the Supreme Court of the United States ruled that the short term (five-year) trust created by Clifford, the taxpayer in that case, for the benefit of his wife, who was to have the income during the trust period, did not have the effect, which it was intended to have, of making the trust income taxable to her, but that it continued to be taxable to him under Section 22(a) of the Revenue Act of 1934. The petitioner contends that by the terms of

---

[1] "§ 22. Gross Income.

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

242

the trust in suit he did not retain as much control over corpus as was retained by Clifford over the corpus of his trust, and that this difference distinguishes the petitioner's case from Clifford's case.

█ If formal differences in the instruments creating short term family trusts are to be accorded controlling importance in determining whether or not the creators of such trusts have sufficiently parted with control over the corpus to make the trust income taxable to the trust beneficiary, there is some force in the petitioner's contention. We are of the opinion, however, that the ruling of the Supreme Court in Helvering v. Clifford, supra, requires a completely realistic approach to the decision of "the basic issue. That issue is whether the grantor after the trust has been established may still be treated * * * as the owner of the corpus." Page 334 of 309 U.S., page 556 of 60 S.Ct., 84 L.Ed. 788. We are advised by the Supreme Court that "the answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation." Page 335 of 309 U. S., page 556 of 60 S.Ct., 84 L.Ed. 788.

█ The evidence in this case justifies the conclusion that the petitioner, at the time he created the trust, had no wish to sell or hypothecate the stock which formed the corpus of the trust; that for all practical purposes he was just as well off with the stock in the possession of his friend and business associate as he would have been had it remained in his own possession, since the trustee was, naturally, governed by the wishes of the petitioner with respect to voting the stock or granting proxies to vote it, and since the trustee performed no functions except to retain the stock during the trust period, to pay the trust income to the petitioner's wife, and to return the stock to the petitioner on the termination of the trust. The petitioner, by the terms of the trust, had safeguarded himself against the possibility that his trustee might dispose of the stock without the petitioner's consent. We think that the respondent and

the Board were justified in concluding that the petitioner's financial situation was not substantially affected by the creation of the trust and that the income from it was his income for purposes of taxation.

It has been our opinion since the decision of the Supreme Court in Helvering v. Clifford, supra, that the effectiveness of the short term family trust as an "arrangement by which the fruits are attributed to a different tree from that on which they grew" (Lucas v. Earl, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731), in order to avoid taxes on income, has been virtually destroyed.[2] If substantial distinctions based on verbal differences in the variously worded trust arrangements whereby one member of a family, with a large income, parts for a short time with the income from some portion of his property for the benefit of some other member of the family with a smaller income, are to be drawn, we think that, in the interests of uniformity of decision, the distinctions should be drawn by the Supreme Court.

Our conclusion is that the Board's order was right. It is affirmed.

[2] See and compare: Helvering v. Hormel, 8 Cir., 111 F.2d 1, affirmed, 312 U. S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; Cox v. Commissioner, 10 Cir., 110 F.2d 934; Thomson v. Helvering, 8 Cir., 114 F.2d 607; Commissioner v. Berolzheimer, 2 Cir., 116 F.2d 628; Reuter v. Commissioner, 5 Cir., 118 F.2d 698; Commissioner v. Chamberlain, 2 Cir., 121 F.2d 765; Commissioner v. Barbour, 2 Cir., 122 F.2d 165; Commissioner v. Woolley, 2 Cir., 122 F.2d 167; Commissioner v. Jonas, 2 Cir., 122 F.2d 169.