### CORY v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 7771.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 18, 1941.

Decided March 12, 1942.

Samuel B. Stewart, Jr., of New York City (Blake & Voorhees, Tracy S. Voorhees, and Peter V. D. Voorhees, all of New York City, on the brief), for petitioner.

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Gerald L. Wallace, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before CLARK and JONES, Circuit Judges, and GIBSON, District Judge.

CLARK, Circuit Judge.

The case at bar is but a short stanza in an epic entitled "The Use of the Short Term Trust for Tax Avoidance." Taxpayers and their counsel have continuously sought to sail between the Scylla of surtaxes and the Charybdis of loss of control. An early and popular device was the creation of a trust in which the settlor retained the power to revest title in himself. This avenue of escape was closed by the Government in 1924.[1] The ingenuity of taxpayer's counsel kept the door of avoidance ajar. Instead of establishing Indian-gift trusts,[2] income is split through the use of a short-term irrevocable trust. A power of revocation is unnecessary where control will automatically return to the grantor at the end of a short term of years. A high degree of dominion can be exercised by the settlor even during the period of the trust, if appropriate powers of management are reserved.

The Government has for some time sought to close this gap also. Direct legislation was not attempted because of constitutional doubts concerning the validity of legislatively defining a short term trust.[3] Faced with the necessity of curbing the avoidance under existing legislation, the Commissioner resorted to Internal Revenue Code Section 166.[4] It was contended that this provision was sufficient authority for the taxation of short term irrevocable trusts. But the Supreme Court refused to uphold the argument that there is "no practical difference between a revocable trust and one certain to be terminated soon."[5] In a companion case,[6] however,

---

[1] Revenue Act of 1924, § 219(g), 26 U. S.C.A. Int.Rev.Acts, page 31. Internal Revenue Code § 166, 26 U.S.C.A. Int.Rev. Code, § 166. See also Internal Revenue Code § 167, 26 U.S.C.A. Int.Rev.Code, § 167.

[2] See Wales, Indian Gifts, 34 Illinois Law Review 119.

[3] See Tyler and Ohl, The Revenue Act of 1934, 83 University of Pennsylvania Law Review 607, 635. The English have settled this problem by taxing the settlor on the income of all trusts extending for a period of 6 years or less. The Finance Act, 1922, 12 & 13 Geo. V, c. 17, § 20(1)(b).

[4] "Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor." Internal Revenue Code § 166, 26 U.S.C. A. Int.Rev.Code, § 166.

[5] Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 552, 84 L.Ed. 796.

[6] Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. The case has been the excuse for three excellent notes, which themselves need no excuse. Pavenstedt, The Broadened Scope of Section 22(a); The Evolution of the Clifford Doctrine, 51 Yale Law Journal 213; Warren, Taxation—Income Tax—Liabili-

the Government successfully established that some of these trusts are taxable under Internal Revenue Section 22(a), 26 U.S.C.A. Int.Rev.Code, § 22(a).[7]

■ Hardly had the Clifford decision been promulgated when repercussions were heard. It has been said few tax problems in recent years have caused as much litigation as this one decision.[8] To begin with the Government had been attempting to tax these trusts under Section 166 and had so argued in the lower courts. Many cases had to be remanded for new findings on the applicability of Section 22(a).[9] In other cases, like the present one, the Government had raised the question of Section 22(a) only as an afterthought by way of answer before the Board. The burden of proof was shifted to the Commissioner.[10] The principal difficulty lies in the fact that the Supreme Court's decision merely roughed in the broad outline of taxability and left the completion of the picture to future decisions.[11] While the decision is of

---

ty of Settlors of Irrevocable Short Term Trusts, 38 Michigan Law Review 885; Irrevocable Trusts and the Federal Income Tax, 49 Yale Law Journal 1305.

[7] " 'Gross Income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * " Internal Revenue Code § 22(a), 26 U.S.C.A. Int.Rev.Code, § 22(a).

[8] See Ray, The Income Tax on Short Term and Revocable Trusts, 53 Harvard Law Review 1322.

[9] Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; Commr. v. Ward, 3 Cir., 119 F.2d 207. See Appeal and Error—Taxation—Reversal Upon Reasons Not Advanced By Government in Court Below, 54 Harvard Law Review 689. Cf. Commr. v. Brown, 3 Cir., 122 F.2d 800.

[10] Rules of Practice of the Board of Tax Appeals, Rule 32, 26 U.S.C.A. Int. Rev.Code following section 5011.

[11] "The question * * * is just how many of the factors present in the Clifford case will warrant taxation of the grantor on the income of a term trust. * * *

"An attempt to formulate by deduction rules as to the extent to which the grantor may exercise control over corpus without subjecting himself to tax makes evident the fact that these questions arising from the Clifford case are questions of degree and will not be answered until enough cases have been decided to prick out the line between situations in which the grantor is taxable and those in which he is not." Ray, The Income Tax on Short Term and Revocable Trusts, 53 Harvard Law Review 1327, 1352 and 1353.

"How short must be the term of the trust—5 years, 10 years, 15 years, for life? How close must be the familial relationship of the beneficiary—adult son, uncle? How extensive must be the grantor's control? How many of these factors need be present and in what combinations?" Surrey, The Supreme Court and The Federal Income Tax: Some Implications of Recent Decisions, 35 Illinois Law Review 779, 807.

"The Court relied (in the Clifford case) upon three factors: The income stayed in the family; the settlor possessed a high degree of control; and the trust was for a short term.

"This decision, like the Horst decision [Horst v. Commissioner, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655], opens vistas of doubt as to its possible scope and application. Must each of the three noted factors be present if the same conclusion is to be reached? The Horst decision may indicate that the length of the term is not significant if the income stays in the family. Suppose the income is made payable to a friend of the settlor, and a trust company is trustee, but the trust runs for only five years? Two out of three Clifford factors are missing; but the settlor is receiving the 'satisfaction' which under the broader interpretation of the Horst decision makes him taxable. On this analysis, the first and third factors together would probably be enough without the second. The second factor alone would be least consequential. We have long been accustomed to think that a settlor can be trustee, can control investments, can vote stock, without thereby making himself subject to tax on the trust income. The most sensible interpretation would seem to be that the three designated factors— the term of the trust, control by the set-

course limited to its particular facts, the Court suggested the importance of the command[12] or control over the property. So a writer in the Michigan Law Review says:

"According to the Court, the trust device will be ignored and the settlor will be treated as owner for the purposes of § 22 (a), whenever the terms of the trust and circumstances surrounding its operation show that the creation of the trust did not effect any substantial change in the *dominion* and *control* of the settlor. No one fact is decisive, but the following are deemed relevant to support a finding that the settlor is to be treated as owner for tax purposes: a trust of short duration for the benefit of the settlor's wife or close relative, in which the right of ultimate enjoyment is reserved to the settlor and in which the settlor is trustee with broad powers of investment and reinvestment." Warren, Taxation—Income Tax—Liability of Settlors, Law Review 885, 889 (italics ours).[13]

We must determine then whether the evidence supports a finding that the settlor retained enough "attributes of ownership" to "be treated as the owner for tax purposes." Since the facts are determinative, they must be set forth at some length. On April 6, 1929 taxpayer created four revocable trusts, one for the benefit of his wife and the rest for the benefit of each of his three sons. The trusts were amended on January 8, 1935. As the tax years in ques-tion are 1935 and 1936, we are concerned only with the amended provisions. The duration of the trusts, as amended, was restricted to ten years, or to the death of the taxpayer, or to the death of the survivor of taxpayer's wife and the children, whichever event should first occur. The trust for the wife provided that the income thereof was to be paid over to her during her life in the trustee's discretion. Upon her death during the term of the trust, the income was to be paid in equal shares to the surviving sons. In each of the trusts for the sons the trustee was to pay over to the beneficiary such portions of the income of the trust as should in the judgment of the trustee be necessary or desirable for the beneficiary's education, maintenance and support. The balance of the income was payable to taxpayer's wife in the wisdom of the trustee. In all four trusts it was provided that "under no circumstances shall any part of the present principal of the trust be paid over to any person other than Mr. Cory or the Executor or Administrator of his estate, it being his intention to make a present gift only of the income of the trust for a period not exceeding ten (10) years." [14]

The taxpayer reserved the right to direct trust investments and to vote stocks held in the trusts.[15] The settlor further retained the right to change any of the administrative provisions of the trust agreements.[16] He also had the power to revoke the trusts with the consent of the bene-

---

tlor, and the beneficiary—are complementary. Income of a trust for a somewhat longer term than 5 years may be taxable to the settlor if his degree of control is high; or the income of a 3-year trust may be taxable to the settlor, though the beneficiary is not a member of his immediate family." Magill, The Federal Income Tax On the Family, 20 Texas Law Review 150, 156-158.

[12] See Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916.

[13] "The grantor's liability must depend upon whether he retains so many of the attributes of ownership as to require that he be treated as the owner for tax purposes or whether he has given up the substance of his dominion and control over the trust property." Paul, Studies in Federal Taxation (3d Series) 170.

[14] Pet.App. pp. 46, 50 and 51.

[15] "The trustee is hereby authorized to retain any property received by him hereunder in the form of investment in which such property is received, although such property be not of the character of investments permitted to trustees by law, and the trustee shall during the life of Mr. Cory retain, dispose, invest, reinvest, and otherwise deal with the principal of the trust fund, and shall issue voting proxies on all stocks held, in such manner as Mr. Cory may direct, regardless of the restrictions imposed by law upon trustees. The trustee may retain as permanent investments of the trust or trusts any assets forming part of the original principal hereof, or forming part of the principal at the time of Mr. Cory's death, and may at all times invest and reinvest the principal of the trust in such forms of investment as he may deem expedient, (subject, however, to the directions of Mr. Cory during his life-time) any legal restrictions upon trustees and investment of trust funds notwithstanding." Pet.App. 7, 8.

[16] "Mr. Cory shall have the right at any time during the term of the trust by written instructions delivered to the

ficiaries currently entitled to the income therefrom. Reserved too was the right to select a substitute trustee if the one named in the agreement should cease to act.[17]

Mr. Pavenstedt in the article above cited[18] considers the factors influencing the Supreme Court to be (1) length of term, (2) identity of the Trustee, (3) identity of the Beneficiaries and (4) control. How do our trusts compare? In the Clifford case the trust was to terminate at the expiration of five years, or sooner in the event of the death of the taxpayer or his wife, while here the trust might possibly continue for ten years.[19] It is true also that the settlor did not start out by naming himself trustee, but he retained the power to do so later. No limitations were placed upon the appointment of a substitute trustee by the settlor in the event that the one named ceased to act. Furthermore, as we shall show in a moment the taxpayer retained complete control over the trustee who was also apparently his attorney.[20] The particular emphasis which the Clifford case placed upon the identity of the beneficiaries is not lost here. The beneficiaries of our trusts are also members of the grantor's "family group". The trust just as in the Clifford case merely reallocated the income within an "intimate family group."

Finally we come to the taxpayer's control over the trusteed property. Unlike the Clifford case the taxpayer here had no right to change the distributive provisions of the trust or the beneficial interests created thereby. Nevertheless, he could control the purse strings through his power to change, modify or alter any of the administrative provisions of the agreement. By this provision the settlor subtly reserved complete dominion over the trustee, since the trustee's appointment and powers are administrative.[21] The trustee had discretionary powers in determining the payments to be made to the beneficiaries. The trustee could even declare that there was no income since he had full authority to settle any question of what was income and what was principal (except that stock dividends were always to be treated as principal). Thus the settlor's dominion over the trustee provided an adequate curb on the operation of the trust. The taxpayer also reserved a right which was singled out in the Clifford case as a very important factor of control. He kept for himself the power to direct trust investments and to vote stock held in the trusts. Thus the retained "satisfactions which are of economic worth" are so numerous and complete that

---

trustee, to change, modify or alter any of the administrative provisions of this agreement but he shall not have the power at any time to change the distributive provisions or to affect the beneficial interests created hereunder or to revoke this trust in whole or in part or to revest in himself title to any part of the corpus of the trust, except that he shall have such powers or any of them with the consent of the beneficiary or beneficiaries currently entitled to the income hereunder. No part of the income of the trust shall be distributed to Mr. Cory or be held or accumulated for future distribution to him or applied to the payment of premiums upon policies of insurance upon his life. Upon the termination of the trust no part of the income theretofore accumulated by the trustee, pursuant to the provisions hereinabove contained, shall be payable to Mr. Cory, but all such accumulated income shall be paid to the beneficiary entitled thereto." Pet. App. 9.

[17] "If Mr. Blake shall cease to serve as trustee hereunder for any reason. The Citizens National Bank and Trust Company of Englewood, is hereby appointed to act as substitute trustee, provided, however, that Mr. Cory reserves the right to revoke such appointment and to designate another substitute trustee at any time not later than sixty days after Mr. Blake shall cease to serve as trustee, in which event the aforesaid bank waives any rights to commissions." Pet.App. 8.

[18] See footnote 6 above. It might be pointed out that in his appendix the learned Attorney-General quite exhaustively collects the authorities.

[19] Trusts of 6 and 6½ years duration have been found within the Clifford rule. Com'r. v. Barbour, 2 Cir., 122 F.2d 165; Helvering v. Elias, 2 Cir., 122 F.2d 171. The settlor of a 20 year trust was held not taxable where he had no reversionary interest. Jones v. Norris, 10 Cir., 122 F.2d 6. The settlor of a ten year trust was held not taxable where no control was retained. Com'r. v. Jonas, 2 Cir., 122 F.2d 169.

[20] Cf. Com'r. v. Barbour, 2 Cir., 122 F.2d 165.

[21] If the taxpayer has control in fact it is immaterial that another person and not the taxpayer has been named as trustee. Helvering v. Richter, 312 U.S. 561, 61 S.Ct. 723, 85 L.Ed. 1043.

the taxpayer's creation of the trust "will not effect his economic position." [22]

It would therefore appear fair to say that we are being asked to distinguish this case on the sole ground of the length of time the trust might have run. We refuse to be so hampered by the calendar.[23] If there is any significance in the length of time it is in relation to the mortality tables. One-fourteenth of the allotted three score years and ten cannot alone overthrow the other factors. As one writer has put it:

"It is the blend of all the reserved rights, not any one right, which leads to a conclusion that the grantor has retained the incidents of 'substantial ownership' and is, thus, the proper taxable person." Income Taxes —Taxation of Trust Income to Grantor of Irrevocable Trust, 27 Virginia Law Review 551, 552.

The cases cited by taxpayer are not opposed to our position here. In Helvering v. Achelis[24] and Commissioner v. Chamberlain[25] the beneficiaries were educational institutions and the court took the view that the rule of the Clifford case is not applicable in such situations. In Commissioner v. Branch[26] and Helvering v. Palmer[27] the grantors retained no such reversionary interest as was retained by the taxpayer here. In the Branch case the taxpayer was to get the property back only after the death of his wife and he might never get it back because she had the power to vest title to the trust in herself. In the Palmer case the taxpayer had no reversionary interest at all. It seems to us that the present case is more similar to Helvering v. Horst.[28] Here, as there, the taxpayer made a gift of income while retaining the susbtance of ownership to the principal which produced the income.

The taxpayer also contends that the Commissioner has failed to sustain the burden of proof imposed by Rule 32 of the Board's Rules of Practice in that it was not shown that an "intimate family group" existed or that the settlor exercised any of his reserved rights. Rule 32 reverses the normal burden of proof in cases before the Board of Tax Appeals.[29] In the ordinary case the burden of proof is on the petitioner. But when this burden is met, the burden of going forward is shifted to the Commissioner.[30] Similarly, in the present case, where the burden of proof is reversed, once the Commissioner showed that the beneficiaries were members of the taxpayer's family and that certain powers were retained by the taxpayer, if petitioner wished to base his argument on the fact that the beneficiaries were hostile or that the powers were not used, the burden of going forward and showing these facts was upon the taxpayer.

The decision of the Board of Tax Appeals is affirmed.

[22] Helvering v. Clifford, 309 U.S. 331, 335, 336, 60 S.Ct. 554, 84 L.Ed. 788.

[23] A settlor was held taxable where he created an irrevocable trust for his wife for life, remainder to his children, with a reversion only if a beneficiary predeceased him. Com'r. v. Buck, 2 Cir., 120 F.2d 775, noted in Income Taxes—What is Income—Settlor Held Taxable On Income of Irrevocable Long-Term Trust Where Substantial Control Including Right to Change Beneficiaries Retained, 55 Harvard Law Review 295; Taxation— Taxability to Settlor of Income From Irrevocable Trust Where He Retains Power to Vote Stock of the Corpus, 90 University of Pennsylvania Law Review 112. See also Warren, Correlation of Gift and Estate Tax, 55 Harvard Law Review 1, 20, 21.

[24] 2 Cir., 112 F.2d 929.

[25] 2 Cir., 121 F.2d 765.

[26] 1 Cir., 114 F.2d 985, 132 A.L.R. 839.

[27] 2 Cir., 115 F.2d 368.

[28] 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655.

[29] See Hamel, Practice and Evidence Before the United States Board of Tax Appeals, 141.

[30] Whitney v. Com'r., 3 Cir., 73 F.2d 589.