### KOHNSTAMM v. PEDRICK, Collector of Internal Revenue.

District Court, S. D. New York.
July 9, 1945.

Osmond K. Fraenkel, of New York City (Charles H. Levitt, of New York City, of counsel), for plaintiff.

James B. M. McNally, U. S. Atty., and Marvin M. Notkins, Asst. U. S. Atty., both of New York City, for defendant.

NEVIN, District Judge (Sitting by Designation).

In this action plaintiff seeks to recover the sum of $80,435.46,[1] with interest, alleged to have been overpaid as federal income taxes for the taxable years 1939, 1940 and 1941. Taxes in the principal amount of $72,661.13 were paid by plaintiff on March 4, 1943. On the following day plaintiff paid interest in the sum of $7,774.33.

On April 30, 1943, plaintiff duly filed claims for refund of the foregoing taxes and interest. More than six months having elapsed prior thereto without any action having been taken upon the refund claims by the Commissioner of Internal Revenue, this suit was commenced on November 9, 1943.

The taxes were assessed under § 22(a) of the Revenue Act of 1939, 53 Stat. 4 et seq, § 22(a) 26 U.S.C.A. Int.Rev.Code, by reason of a trust deed made by plaintiff in 1928.

Two issues are involved. The first is whether the Commissioner of Internal Revenue erred in including in plaintiff's income for the years in question the income derived from an inter vivos trust created by the plaintiff on April 23, 1928, as amended. The second is whether the Commissioner erred in including in such income the amounts of income earned upon the income of the trust, which income was distributed to the plaintiff's wife for the "education, support, maintenance and welfare" of the plaintiff's three children during their minority.

The cause came on for hearing before the Court, without a jury, on September 15, 1944. While by agreement, some additional evidence was adduced, the pertinent facts are all set forth in a Stipulation

---

[1] Because of various refunds made to plaintiff's wife and children which plaintiff agrees "should be deducted from any recovery to which plaintiff might be entitled," it is agreed in the Stipulation that, "If plaintiff is entitled to recover the full amount sued for herein, he shall be entitled to judgment in the aggregate sum of $72,461.08 plus interest thereon from March 4, 1943, and $7762.99 plus interest thereon from March 5, 1943"— a total sum of $80,224.07 plus interest.

of Facts signed by counsel for the respective parties and filed on September 15, 1944.

The Court has adopted the facts as recited in this Stipulation as its Findings of Fact. Inasmuch as its Findings are hereinafter set forth, it is unnecessary to make a further statement of the facts as disclosed by the record.

The Stipulation was introduced in evidence and (except as to paragraph 26, thereof) is now plaintiff's exhibit 1. While, as stated, the Stipulation is signed by counsel for the respective parties, the record shows that nevertheless counsel for plaintiff reserved the right to and did object to the introduction in evidence of paragraph 26 thereof, and that paragraph is not part of plaintiff's case.

The record further shows (P. 46) that at the close of plaintiff's case, defendant then offered in evidence paragraph 26 of the Stipulation—which incidentally was the only evidence offered on behalf of defendant in addition to that contained in the Stipulation. Paragraph 26 is now defendant's exhibit A–1 herein.

At the time paragraph 26 was offered in evidence, the record shows the following: "The Court: I will do this: at this time I will admit paragraph 26 which appears on page 8 of the stipulation which is now marked Plaintiff's Exhibit 1, and we will let that paragraph be marked as Defendant's Exhibit A–1, and it is admitted subject, however, to plaintiff's objection and plaintiff's motion to strike, and that will be considered and passed on by the court. If I sustain the objection that paragraph will not be considered, and if I do not sustain it, it will be considered."

■ Upon full consideration, the Court is of opinion and so finds that plaintiff's objection and motion to strike above referred to are each and both not well taken and that they should be and hereby, they are, overruled. Paragraph 26 is admitted in evidence and has been considered by the Court along with all of the other evidence in arriving at its ultimate conclusion. To this finding and ruling of the Court, plaintiff's exception is here noted.

The claims of the respective parties cannot be better set forth than in the language of their counsel. Counsel for plaintiff stated in the record that "it is plaintiff's contention that he is not to be taxed either on the direct income or on the indirect income; clearly not on the indirect income because the securities from which that income was derived belonged not to him but to his children; not on the direct income because this was a trust irrevocable concerning which the plaintiff had no right whatever to receive any of the income or principal, or to determine who should receive that income or principal. All those provisions were fixed in the trust indenture. It is true that the plaintiff reserved in that indenture certain rights to control investments and vote stock, and one or two minor things, but * * * the courts have not held that the reservation of those rights permit the taxation of the income to the settlor where he has not the power to determine who shall get the money and can himself never get any of it. * * * Now the commissioner, in assessing this tax, proceeded originally on two theories, first, as to the entire income of the trust that it was taxable to plaintiff under Section 22(a) of the Revenue Code, because of his alleged control over the trust, and then as to the portions of the income applicable to the then minor children, on the ground that the income might have been used for their support, and under the Stuart case (Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L. Ed. 154), interpreting Section 167(a) 26 U.S.C.A. Int.Rev.Acts, page 727 is therefore taxable to the grantor. After the Stuart case was decided and after this assessment was made * * * Congress in the 1943 Revenue Act * * * changed the law as to the future so that now income from a trust is not taxable to the settlor merely because it might be used for the support of minor children, but only if it actually is used for their support, and the evidence here shows that none of the income was used for the support of the minor children but all of it was accumulated and invested for them."

Defendant's position was stated by his counsel as follows: "preliminarily I might say this: there are indeed two different bundles of securities, if you will, the income of which is being taxed in this case, and the taxation on which the Government now defends. The first is the income from this trust indenture which was set up in 1928, which, at that time, provided that the settlor, the present plaintiff, might revoke it. Since then, and prior to the years involved in this case, the plaintiff gave up the right to revoke or change the disposition of the funds insofar as naming new beneficiaries.

or substituting beneficiaries is concerned, prior to the commencement of this action. In addition to the income from the trust there is the income which the children receive independently. Now when I say independently, I mean independently of the trust. * * * Taking up the trust first, it was the usual type of trust. It was for the benefit of the plaintiff's wife and his three children. As far as the wife was concerned, she was to get the income for life and then to the two children if they survived and a certain other way which is not important here. So far as the children were concerned, it also was for the duration of the plaintiff's life. In the event of his death prior to the child reaching 25, he was to get a certain amount of the corpus, another third I believe on the child attaining the age of 30, and the balance, if he wanted it, at the age of 35. There was a queer twist in the manner of distributing the income for the children in this trust. The indenture said that it was to be distributed to the wife for the education, support, maintenance and welfare of the children. Actually the income was distributed to the wife. * * * There is nothing in either the stipulation or the trust indenture or the complaint * * * or any other place * * * that indicates in what capacity the wife received those funds. * * * Whether she received it as agent for the children or as agent for the settlor does not appear. I think she received it for the settlor as the stipulation shows she never spent a penny except after consultation with the plaintiff and pursuant to his directions; in other words, he told her what to do with the money and she did it. During the three years in question she accumulated the funds, except that she paid some taxes. * * * I would like to point out now that the theory of the Government in this case is based upon the Clifford case (Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788). * * * The theory of the case is dependent upon what the court in the Clifford case calls the 'family solidarity' doctrine; in other words, where a man sets up a trust and he has control over the trust, and the trust income is to be distributed among his immediate family, he has just done nothing. It was true in the Clifford case as in this case that he could not get the money himself, but the court points out that is not important, * * * and I would like to point out now that the Government is not relying on Helvering v. Stuart."

It is a well recognized principle that the Government is not required to tax trusts as separate entities where the terms of the trust indenture, the manner of its creation, and the method of its operation indicate that the corpus of the trust is not to be distinguished from the grantor's other property for tax purposes. In Helvering v. Clifford, 309 U.S. 331, at pages 334, 335, 60 S.Ct. 554, at page 556, 84 L.Ed. 788, the Court say: "Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme, as the owner of the corpus. See Blair v. Commissioner, 300 U.S. 5, 12, 57 S.Ct. 330, 333, 81 L.Ed. 465. In absence of more precise standards or guides supplied by statute or appropriate regulations, the answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation. And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) is concerned." See also Central National Bank v. Commissioner, 6 Cir., 141 F. 2d 352, 153 A.L.R. 542.

As stated by defendant in his brief, it seems obvious that in this case plaintiff retained a group of powers which permitted him to dictate investment policies and vote the stock of a company of which he was the directing head and which was closely held. These circumstances, coupled with the fact that the beneficiaries were his wife and children, make it clear that the plaintiff did not part with any substantial interest in the property. McKnight v. Commissioner, 8 Cir., 123 F.2d 240; Bush v. Commissioner, 8 Cir., 123 F.2d 242; Reuter v. Commissioner, 5 Cir., 118 F.2d 698.

The Court is in accord with the views of defendant that in the light of the powers reserved by plaintiff under the agreement the trust was in its essence merely a device for distributing family income within the rationale of Helvering v. Clifford, supra, and that there is no evidence in the case on the issues here presented, which would warrant

reversing the determination of the Commissioner.

In his brief plaintiff seeks to distinguish the Clifford case from the case here presented. He says inter alia (Br.P. 7): "At the outset, a vital difference between the case at bar and the Clifford case should be noted. There the trust was to run for a maximum period of five years, with a reverter to the creator of the trust. Here the trust was for the life of the wife and until the children became 35, and there was no possibility of reverter."

■ But, as defendant points out, while it is true that the Clifford trust was a short-term one, that is important only when the other controlling factors—such as those which are present here—are lacking. Central National Bank v. Commissioner, supra. The important factor in determining taxability is control, and the duration of the trust is merely one of the elements to be considered by the Court. Helvering v. Elias, 2 Cir., 122 F.2d 171; Commissioner of Internal Revenue v. Barbour, 2 Cir., 122 F.2d 165; Commissioner of Internal Revenue v. Buck, 2 Cir., 120 F.2d 775, 778.

In McKnight v. Commissioner, supra, 123 F.2d 240, at page 242, it is stated by the Court that: "We are of the opinion, however, that the ruling of the Supreme Court in Helvering v. Clifford, supra, requires a completely realistic approach to the decision of 'the basic issue. That issue is whether the grantor after the trust has been established may still be treated * * * as the owner of the corpus.'"

A comparison of the instant case with the Clifford case shows that there are no essentially different circumstances. In both cases, the grantor had unrestricted control over the investments in the trust.

In Reuter v. Commissioner, supra, 118 F.2d 698, at page 699, the Court say: "Our problem is simplified * * * by the Supreme Court in the case of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L. Ed. 788. There, it was held that Congress intended to use the full measure of its taxing power so as to include benefits indirectly retained which are not antagonistic to full ownership. The Clifford case is indistinguishable, upon its material facts, from the one at bar." Here, too, in the view of the Court, the Clifford case is indistinguishable upon its material facts, from the one at bar.

In the Clifford case, 309 U.S. at page 335, 60 S.Ct. at page 556, 84 L.Ed. 788, the Court stated: "In this case we cannot conclude as a matter of law that respondent ceased to be the owner of the corpus after the trust was created." In the instant case, this Court cannot conclude as a matter of law that plaintiff ceased to be the owner of the corpus after the trust was created.

■ Nor should the liability for taxes be shifted from the plaintiff to his children. The circumstances under which plaintiff's wife received the income earmarked for the children, do not justify such a course.

■ There is no indication that plaintiff's wife received the funds as agent for the children. On the contrary, it is entirely consistent with the provisions of the agreement that the wife received the trust income pursuant to an understanding with her husband as to the manner of distribution thereof, and the facts show (Stipulation, paragraphs 21 and 25) that the plaintiff was actually the person who determined the disposition of the funds. It has been consistently held that the assessment of the Commissioner establishes a prima facie case of liability against the taxpayer. "Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid. Lucas v. [Kansas City] Structural Steel Co., 281 U.S. 264, 271, 50 S.Ct. 263, 74 L.Ed. 848; Wickwire v. Reinecke, 275 U.S. 101, 105, 47 S.Ct. 336, 71 L.Ed. 840; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212." Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623, to the same effect: Reinecke v. Spalding, 280 U.S. 227, 233, 50 S.Ct. 96, 74 L.Ed. 385; Botany Worsted Mills v. United States, 278 U.S. 282, 289, 290, 49 S.Ct. 129, 73 L.Ed. 379; United States v. Anderson, 269 U.S. 422, 443, 46 S.Ct. 131, 70 L.Ed. 347; Bennett v. Commissioner, 8 Cir., 139 F.2d 961, 963; Commissioner v. Barbour, 2 Cir., 122 F.2d 165, 167.

In the instant case, plaintiff has failed to sustain the burden resting upon him.

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the Court has arrived at the following:

Findings of Fact:

Plaintiff now is and at all times hereinafter mentioned was a citizen of the United

States and a resident of the State of New York, having his place of business at 87 Park Place, City and County of New York.

2. Defendant now is and continuously since March, 1942, has been Collector of Internal Revenue for the Second District of New York.

3. On February 25, 1943, the Internal Revenue Agent in Charge of the Second New York District advised plaintiff that deficiency income taxes were to be assessed against him for the years 1939, 1940 and 1941 in the amounts of $17,882.15, $23,817.-61 and $30,961.37 respectively by reason of the inclusion of income derived under a certain trust agreement executed by plaintiff on April 23, 1928, as modified from time to time, and also the inclusion of the income realized upon income of the trust distributed to Madeline Kohnstamm, plaintiff's wife, pursuant to the terms of said trust agreement, and also by reason of certain adjustments made in the income tax returns filed by the plaintiff.

4. Plaintiff paid said taxes to the defendant on March 4, 1943. On March 5, 1943, he paid the accrued interest thereon, to-wit, the sum of $3,179.35 for the year 1939, the sum of $2,805.58 for the year 1940 and the sum of $1,789.40 for the year 1941.

5. At the time the deficiencies above shown were determined, appropriate over-assessments were allowed to the plaintiff's wife and children by reason of the inclusion, in income tax returns filed on their behalf, of the income hereinabove referred to.

6. Thereafter, and on May 14, 1943, the Commissioner of Internal Revenue assessed plaintiff for the amount of additional taxes and interest referred to in Findings Nos. 3 and 4.

7. On April 30, 1943, plaintiff duly filed claims for refund of said taxes and interest, copies of which are annexed to the complaint and marked Exhibits "A," "B," and "C." More than six months elapsed prior to the commencement of this action without any action having been taken upon said claims by the Commissioner of Internal Revenue.

8. On April 23, 1928, plaintiff executed a trust agreement wherein the City Bank Farmers Trust Company, a corporation organized and existing under the laws of the State of New York, was made trustee. Said agreement contained a provision whereby the plaintiff received the right to make certain changes therein. From time to time, and prior to January 1, 1939, various changes were made in said agreement. A true and correct copy of the trust agreement as in full force and effect on January 1, 1939, and continuously thereafter is annexed to the complaint as Exhibit "D."

9. The immediate named beneficiaries of said trust fund were plaintiff's wife, Madeline P. Kohnstamm, and his three children, Elizabeth Kohnstamm Ogden, born December 13, 1920, Paul L. Kohnstamm, born November 14, 1922, and Richard L. Kohnstamm, born April 17, 1926. All of said persons are still alive.

10. In each of the years 1939, 1940 and 1941 Federal income tax returns were filed on behalf of each of said children. Except for the year 1941 in the case of the return filed by Elizabeth K. Ogden, said returns were signed by the plaintiff as "Parent and Guardian." These returns included, in addition to the income from the trust fund, income from dividends, interest on bank deposits and mortgages, and interest on corporation bonds.

11. Annexed to the Stipulation (and marked Exhibit 1) is a statement showing the amounts, as adjusted, reported by each of plaintiff's children as such income for each of the years 1939, 1940 and 1941. Also annexed thereto (and marked Exhibit 2) is a statement showing the source of such income, stating the bank accounts into which the various items of income were deposited.

12. During each of the years 1939, 1940 and 1941 savings bank accounts were maintained in the name of each of the children as follows:

*For Elizabeth Kohnstamm*

No. 123888 in the Emigrant Industrial Savings Bank.

No. 2533420 in the Dry Dock Savings Institution.

No. 135396 in the Bowery Savings Bank.

No. 179254 in the Central Savings Bank.

No. 96688 in the East River Savings Bank.

*For Paul Kohnstamm*

No. 123887 in the Emigrant Industrial Savings Bank.

No. 253382 in the Dry Dock Savings Institution.

No. 135382 in the Bowery Savings Bank.

No. 179255 in the Central Savings Bank.

No. 96687 in the East River Savings Bank.

*For Richard Kohnstamm*

No. 253383 in the Dry Dock Savings Institution.

No. 96689 in the East River Savings Bank in the name of Lothair Kohnstamm in trust for Richard Kohnstamm.

No. 191104 in the Emigrant Industrial Savings Bank in the name of Lothair Kohnstamm in trust for Richard Kohnstamm.

Lothair Kohnstamm also maintained accounts in the Seaman's Bank for Savings in trust for his children as follows:

No. 915047 for Elizabeth Kohnstamm.

No. 915048 for Paul Kohnstamm.

No. 915049 for Richard Kohnstamm.

13. The income reported in Exhibits 1 and 2 (referred to in Finding No. 11) from dividends and from interest on bank deposits and mortgages was in the years 1939 and 1940 deposited in one or more of the savings bank accounts hereinabove listed and in the year 1941 was deposited in such savings bank accounts and, in addition, in accounts maintained by Paul Kohnstamm and Elizabeth Kohnstamm in their own names at the Bankers Trust Company.

14. No part of the income referred to in said Exhibits 1 and 2 was deposited in any one of the three accounts in the Seaman's Bank for Savings maintained by plaintiff in trust for his children, except the interest on the balance in each of those accounts, which interest was as follows:

| 1939 | 1940 | 1941 |
|------|------|------|
| $23.78 | $24.26 | $14.28 |
| 23.78 | 24.26 | 14.28 |
| 75.76 | 77.29 | 44.55 |

15. None of the income referred to in said Exhibits 1 and 2 was deposited in the savings bank accounts maintained by plaintiff in trust for his son Richard in the Emigrant Industrial Savings Bank or East River Savings Bank except the interest in said accounts as follows:

| | 1939 | 1940 | 1941 |
|---|------|------|------|
| Emigrant Industrial Savings Bank | $120.47 | $114.53 | $81.80 |
| East River Savings Bank | 78.02 | 77.52 | 68.96 |

and except that in the East River Savings Bank account deposits of other income were made in 1939 aggregating $410 and in 1940 aggregating $241.

16. The bonds referred to in Exhibit 2 (Finding No. 11) were kept by Madeline P. Kohnstamm in a safe deposit box in the Mercantile Safe Deposit Company maintained in her name, and were designated in said box as the property of the children by notations on the envelopes or bundles in which they were kept. During each of the years 1939, 1940 and 1941, to such extent as was required by the Federal Income Tax Law and Regulations, ownership certificates filed in connection with the income from said bonds were in the names of the three children.

17. The interest from the bonds referred to in said Exhibit 2 was deposited in an account in the name of Madeline P. Kohnstamm Special at the Bankers Trust Company during each of the years 1939, 1940 and 1941. During those years said account was maintained chiefly for the purpose of receiving and paying out the interest from said bonds.

18. Annexed to the Stipulation (and marked Exhibit 3) is a statement showing the date and manner of purchase of those of the securities listed in Exhibit 2 (referred to in Finding No. 11) which plaintiff has been able to trace, as well as a statement of the disposition of any such securities as were disposed of during any of the years 1939, 1940 and 1941. Said Exhibit 3 indicates the source of the moneys used for the purchase of securities and the disposition of the moneys received from their sale.

19. All of the stocks listed in Exhibit 2

Elizabeth Kohnstamm
Paul Kohnstamm
Richard Kohnstamm

(referred to in Finding No. 11) were registered in the individual names of the children, as set forth in Exhibit 3 (referred to in Finding No. 18) at the direction of Madeline P. Kohnstamm, and continued to remain registered in their names through the end of 1941.

| 1939 | 1940 | 1941 |
|------|------|------|
| $120.47 | $114.53 | $81.80 |
| 78.02 | 77.52 | 68.96 |

20. All of the mortgage certificates from which income was received as set fourth in said Exhibit 2 were registered in the name of Paul Kohnstamm, as appears

from said Exhibit 3, at the direction of Madeline P. Kohnstamm, with the exception of two certificates of the Lawyers Title & Guaranty Company, which were held for the benefit of Elizabeth and Paul Kohnstamm by the Lawyers Title Company as trustee under the Last Will and Testament of Rose Peck, deceased, as more particularly set forth in said Exhibit 3.

21. The purchases and sales of securities referred to in said Exhibit 3 were made in the name of Madeline P. Kohnstamm, but were registered as heretofore indicated in Findings Nos. 19 and 20. The bonds referred to in said Exhibit 3 were in bearer form. All such purchases and sales were made by Madeline P. Kohnstamm on the advice and suggestion of the plaintiff.

22. In each of the years 1939, 1940 and 1941 the trustee under the trust agreement paid over the income from the share set aside for plaintiff's children to the mother of said children, Madeline P. Kohnstamm, in accordance with Paragraph 19 of the trust agreement, the amounts of said payments being respectively as follows: For the year 1939, $8,705.33 for each child; for the year 1940, $8,877.29 for each child; and for the year 1941, $9,597.72 for each child.

23. Madeline P. Kohnstamm was familiar with the terms of said trust agreement.

24. Madeline P. Kohnstamm in each of the years 1939, 1940 and 1941 deposited all of the children's share of the income received from the trustee in an account maintained by her in the City Bank Farmers Trust Company for such purpose, and utilized such income only as set forth in Exhibit 4 annexed to the Stipulation.

25. Madeline P. Kohnstamm consulted plaintiff with regard to the exercise by her of the discretion vested in her under Paragraph 19 of the trust agreement to apply the income to which each child was entitled towards the education, support, maintenance and welfare of such child, and consulted plaintiff with regard to the manner of disposition of the income received by her from the trustee and with regard to the investments made by her, and acted in conformity with plaintiff's advice and suggestions.

26. In addition to the moneys received by Madeline P. Kohnstamm from the trust fund, she received additional moneys from various securities owned by her. Also, the plaintiff, in each of the years in question, gave her certain further amounts of money. The aggregate of these funds was used by Mrs. Kohnstamm to pay the rent on the apartment occupied by the plaintiff and his family, to pay some of the expenses of maintaining and operating the apartment and to provide food for the family, to pay insurance premiums on various policies of insurance on the life of the plaintiff, to pay her own income taxes, to pay her own personal expense and to help support some of her relatives. Madeline P. Kohnstamm's income and disbursements during the years in question was as follows:

Income

|  | Dividends and Interest on Securities Owned. | Trust Income | Received from Plaintiff | Total |
|---|---|---|---|---|
| 1939 | $11,909.76 | $ 8,705.32 | $12,000.00 | $ 32,615.08 |
| 1940 | 11,927.84 | 8,877.30 | 14,000.00 | 34,805.14 |
| 1941 | 12,028.28 | 9,997.71 | 19,025.00 | 40,650.99 |
|  | $35,865.88 | $27,180.33 | $45,025.00 | $108,071.21 |

Disbursements

|  | Rent and Expenses | L. S. K. Insurance | | Income Taxes | Total |
|---|---|---|---|---|---|
| 1939 | $21,576.49 | (A) | $ 5,208.92 | $1,911.80 | $ 34,411.46 |
|  |  | (B) | 5,714.25 |  |  |
| 1940 | 24,860.75 | (A) | 5,167.82 | 1,321.21 | 37,000.98 |
|  |  | (B) | 5,651.20 |  |  |
| 1941 | 24,183.81 | (A) | 5,262.77 | 2,001.31 | 37,088.34 |
|  |  | (B) | 5,640.45 |  |  |
|  | $70,621.05 |  | $32,645.41 | $5,234.32 | $108,500.78 |

The insurance premiums listed above which are preceded by the letter "A" indicate premiums on policies owned by the plaintiff; those preceded by the letter "B" indicate premiums on policies on the life of the plaintiff but owned by his wife.

27. The trustee did not during any one of the years 1939, 1940 or 1941 request plaintiff to consent to any application of the principal of the trust fund for the use of any one of his children, as provided in Paragraph 3 of the trust agreement.

28. The trustee did not during any one of the years 1939, 1940 or 1941 request plaintiff to grant his permission to exercise any of the powers which might be exercised by the trustee under Paragraphs 9 and 10 of the trust agreement.

29. Plaintiff did not during any one of the years 1939, 1940 or 1941 exercise any rights or powers reserved to him in said agreement, except with regard to the right to direct the trustee to make sales and investments and to grant proxies to vote shares of stock which are contained in Paragraph 8 of said agreement.

30. No sales or purchases of the securities constituting the corpus of the trust fund were made except at the direction or consent of plaintiff. The extent of such purchases and sales during 1939, 1940 and 1941 is set forth in Exhibit 5 annexed to the Stipulation. Pursuant to plaintiff's request, the trustee granted to him proxies to vote the stock of Kohnstamm & Co., Inc., constituting part of the corpus of said trust fund, and plaintiff voted such stock pursuant to said proxies.

31. Annexed to the Stipulation (and marked Exhibit 6) is a list of the securities constituting the corpus of the trust fund as of April 25, 1939, April 25, 1940, and April 25, 1941, showing the approximate valuation of each of said securities as of that time. With the exception of H. Kohnstamm & Co., Inc., all of the corporations, the securities of which are listed in said exhibit, are companies wholly independent of plaintiff, whose securities are widely held and are currently bought and sold in the market.

32. H. Kohnstamm & Co., Inc., is a corporation organized for the purpose of the manufacture and sale of chemicals. During the years 1939, 1940 and 1941 plaintiff was a member of the Board of Directors. He was vice-president of the corporation until the end of 1939, since which time he has been President. He received a salary as follows: 1939, $14,650.77; 1940, $19,-280.00; 1941, $24,280.00.

33. During each of the years 1939, 1940 and 1941 the total amount of shares of H. Kohnstamm & Co., Inc., issued and outstanding, was 31,510 of $100 par value each. On January 1, 1939, plaintiff was the owner of 2,594 shares of said stock. On November 19, 1939, plaintiff became the owner of 700 additional shares of said stock and remained the owner of 3,294 shares of stock during the remainder of the period in question. During such period there were 3,696 shares of such stock in the trust created by the plaintiff.

34. Annexed to the Stipulation (and marked Exhibit 7) is a statement showing the individual stock holdings in H. Kohnstamm & Co., Inc., as of April 23, 1928, January 1, 1939, and December 31, 1941, showing the relationship of the principal stockholders to plaintiff.

35. On August 7, 1934, a voting trust agreement was entered into between the plaintiff and his second cousins, Edward Kohnstamm and Joseph Kohnstamm, a copy of which is annexed to the Stipulation (and marked Exhibit 8). Said agreement was never actually used and no stock was deposited pursuant to the terms thereof. At the 1939 meeting of the stockholders of the corporation proxies were executed by a large number of stockholders running to Edward Kohnstamm, Max Wallenstein and the plaintiff. In the years 1940 and 1941 the proxies ran to Louis J. Wolf, Charles N. Waterman, Max Wallenstein and the plaintiff. In each of said years there were included among said proxies so executed, proxies representing the shares of stock mentioned in the voting trust agreement.

Conclusions of Law:

(1) Plaintiff did not cease to be the owner of the corpus of the estate after the Trust was created.

(2) The income was properly taxed to plaintiff.

(3) The liability for taxes should not be shifted from plaintiff to his children.

(4) The Commissioner's determination that the income was plaintiff's and not the children's should remain undisturbed.

(5) There is no evidence in this case which would warrant reversing the determination of the Commissioner.

(6) The complaint herein should be dismissed at plaintiff's cost, as prayed for by defendant in his answer.

Judgment accordingly.