John G. Schroer v. Commissioner.
John G. Schroer v. Commissioner
Docket No. 4664.
United States Tax Court
1945 Tax Ct. Memo LEXIS 71; 4 T.C.M. (CCH) 910; T.C.M. (RIA) 45304; September 28, 1945
Thomas L. Tallentire, Esq., 1600 Fountain Square Bldg., Cincinnati 2, O., and Edward R. Dorr, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion
*72 LEECH, Judge: Respondent has determined deficiencies in income tax of $1,038.62 for 1940 and $2,757.10 for 1941. The issues are: (a) whether respondent erred in including in petitioner's income all of the income of a trust created by him for the benefit of himself and wife; (b) did petitioner sustain a deductible loss in 1940 by reason of certain stock becoming worthless in that year; (c) did respondent err by including in petitioner's income, as salary, certain sums paid by Cincinnati Stamping Company in each of the years involved. Findings of Fact Petitioner is a resident of Cincinnati, Ohio. His returns for the taxable years involved were filed with the collector for the first district of Ohio at Cincinnati, Ohio. On August 5, 1940, petitioner, as settlor, transferred in trust certain property described as 300 shares of common stock in "Cincinnati Stamping Co." and a one-fifth partnership interest in "The Cincinnati Stamping Co." There is evidently a typographical error in this description as the stock in question was in "The Cincinnati Stamping Co.", a corporation, and the item designated as "partnership interest" was an interest in an alleged partnership known as "Cincinnati *73 Stamping Co." Ralph E. Grimme, a close business associate of petitioner, was designated as trustee and petitioner and his wife were the beneficiaries. The trust indenture provides as follows: "1. All and any of the Income derived from the above Trust shall be distributed in the following order, to wit: "(a) The payment of all taxes and expenses incidental to the operation of this Trust. "(b) The payment of interest upon the obligations of this Trust shall consist of the issuance of Bonds, aggregating the face value of Forty Thousand Dollars ($40,000.00), bearing interest at the rate of 8%, noncumulative. "(c) The remainder of the income to be divided in equal shares between John Schroer and Dorothy K. Schroer for their natural lives and/or durations of this Trust, with the following exception: In the event that Dorothy K. Schroer shall cease to be the wife of John Schroer, then the remaining income as distributed under Section 3 of this Trust shall all inure to the benefit of John Schroer, or to whom he may designate. "2. In the event of the death of Dorothy K. Schroer or John Schroer his or her proportion of the share of the income to be derived from the corpus of this Trust *74 shall be paid to the heirs of the body of John Schroer and Dorothy Schroer, share and share alike, from the date of the death of either John Schroer or Dorothy K. Schroer, share and share alike until the termination of this Trust. Should either John Schroer or Dorothy K. Schroer die prior to the termination of this Trust, leaving no heir of the body surviving, then his or her proportionate share of such income shall revert to each other, provided however, that said Dorothy K. Schroer shall at the time of the death of John Schroer still remain his wife. In the event that John Schroer should die, and at the time of his death Dorothy K. Schroer shall not be his wife, then the income or the remainder of this Trust shall revert to the father, mother, brothers and sisters of John Schroer to be divided among those surviving at the time of the death of John Schroer, share and share alike. "3. Upon the 31st day of August, 1965, this Trust shall terminate and cease and the corpus thereof then remaining in the hands and name of the Trustee shall be conveyed, transferred and delivered as follows: First, the principal sum shall be used to retire the outstanding debentures or bonds of John Schroer *75 in the sum of Forty Thousand ($40,000.) Dollars, These bonds shall be redeemed at par, but if the sum is insufficient to pay par, then the Bonds shall be retired for the value of this Trust and each bondholder shall receive his proportion in relation to the proportion of Bonds held to the total Bonds issued and outstanding on the 31st day of August 1965. "Second, in the event of that at the termination of this Trust, the Settlor, John Schroer shall still be alive and also that Dorothy K. Schroer shall still be alive and the wife of John Schroer, the net corpus of this Trust after retiring the Bonds shall be divided equally between John Schroer and Dorothy K. Schroer, with the exception however, that such amount due Dorothy Schroer shall be held in trust until her death, said Trust to continue under the same Trusteeship as herein mentioned and income of the one-half interest of Dorothy K. Schroer shall be paid out to her without restriction yearly. The Trustee shall also be required to liquidate this Trust in such a manner so that Dorothy K. Schroer shall receive a Total of Three Thousand ($3,000.00) per annum; and if the income is not sufficient, said Trustee shall be empowered to *76 liquidate sufficient assets to make up the total payment to said Dorothy K. Schroer and shall continue with these payments as long as Dorothy K. Schroer remains the wife of John Schroer, or unmarried widow thereof. "In the event at the termination of this Trust with John Schroer shall not be living, then all the corpus of this Trust shall revert to Dorothy K. Schroer provided she was the wife of John Schroer at the time of his death and the unmarried widow thereof. The liquidation of this Trust, however, shall be limited however, to the aforesaid restriction that at no time Dorothy K. Schroer receive an annual payment of interest or interest and principal in excess of the sum of Three Thousand ($3,000.00) Dollars. Should the said John Schroer not be living at the time of the termination of this Trust, and Dorothy K. Schroer having been the wife of John Schroer at the time of his death, upon the decease of said Dorothy K. Schroer, the remaining corpus of this estate shall be divided into two parts, one-half of same to be divided equally between the mother, father, brothers and sisters then living of John Schroer; and the remaining one-half to the mother, father, brothers and sisters *77 of Dorothy K. Schroer, provided however, that if in the interim between the date of this Trust and August 31, 1965, no child or children shall have been born to John and Dorothy K. Schroer and no children or child, legally adopted by them. In the event that a child or children are born or legally adopted at the time of the termination of this Trust, provided further, that John Schroer shall not be living at the maturity of this Trust, then his one-half interest shall revert to his child or children, or legally adopted child or children, said one-half interest to be divided equally among them. In like manner, if Dorothy K. Schroer shall be deceased at the date of the expiration of this Trust, and a child or children of her and John Schroer, or any legally adopted child or children are living at the date of the expiration of this Trust, then her share as hereinabove provided, shall be divided equally among the children hereinabove mentioned. "If at the expiration of this Trust, both John Schroer and Dorothy K. Schroer shall be deceased, the corpus of this Trust shall be divided equally among their children or legally adopted child or children. In the event at the date of the expiration *78 of this Trust of John Schroer and Dorothy K. Schroer shall both be deceased and Dorothy K. Schroer shall have been the wife of John Schroer at her death, then the corpus of this Trust shall be divided into two parts; one-half to be divided equally between the mother, father, brothers and sisters of Dorothy K. Schroer, and the other half to be divided equally between the mother, father and brothers and sisters of John Schroer. "4. The Trustee shall be authorized to issue bonds in the sum of Forty Thousand ($40,000.00) Dollars. These Bonds are to be secured by the assets herein invested in this Trust. These bonds shall be delivered to the Settlor and he shall have the right to dispose of them as he may desire. The interest on these Bonds shall be 8% but the interest shall not be cumulative. The interest shall be paid as hereinbefore mentioned. Should any of the Bonds herein be delivered to John Schroer to place in Trust, said John Schroer shall notify the Trustee, Ralph E. Grimme, who shall abide accordingly and shall pay the interest on these bonds to the holders thereof, if in trust or otherwise. And upon the redemption, the payment therefore shall be made in accordance with the *79 requirements of any bonds which may have been put in the Trust by said John Schroer. "5. The Trustee shall have the right to appoint a Manager who shall be John Schroer, during the life of John Schroer, to have full power to sell, transfer, convey, assign and deliver any and all securities included in this Trust, shall hold, manage and control such property during his life with the full power to sell, transfer and assign and deliver same and with full power to invest and reinvest the principal thereof with like power over all investments, which investments or reinvestments may be made by the said Manager in his whole discretion without limitation to such investments as may by law be designated as proper investments for Trustees. In the event of the death of John Schroer, Ralph E. Grimme shall act as Manager and the duties of Manager shall revert to Ralph E. Grimme as Trustee. "6. The said Manager, or upon his death, the said Trustee shall have full power in converting personalty into realty and realty into personalty; to consent to consolidations and reorganizations; and to execute and deliver all powers of attorney, deeds, mortgages and agreements which they may deem necessary *80 and advisable in the administration of this Trust. "7. Receipts signed by the Manager, or at his death, the said Trustee for any monies or other property delivered to them shall at all times be sufficient to discharge the person or persons delivering same from all further accountability for such property and no person, corporation or transfer agent dealing with said Trustee as to matter purporting to affect this Trust Estate shall be concerned or required to inquire as to such transactions nor as to the disposition of the proceeds thereof. "8. The Manager, or upon his death, the Trustee shall not be required to set aside any sinking funds, shall have full power to determine what shall be considered corpus and what income from this Trust, and shall not be held accountable for any errors of judgment but shall be liable only for gross negligence or wilful default in the administration of this Trust. "9. Should the Trustee named herein die prior to the termination of this Trust, the Settlor, John Schroer, shall appoint his succeeding Trustee for the remainder of the term of this Trust. This appointment may be made thru the Will of John Schroer, if he should so desire. "10. This *81 trust is hereby declared to be irrevocable and the Settlor hereby fully and completely releases, conveys, transfers and assigns the property described to the Trustee herein named without any right, power or authority in any way to cancel, revoke or alter the transfer, conveyance or assignment referred to, or any of the terms of this Trust Agreement." Cincinnati Stamping Co., an alleged partnership, a one-fifth interest in which was transferred in the aforementioned trust, was an organization formed under an agreement designated "Partnership Agreement". Its so-called "partners" during the period here in question were "The Schroer Trust", created under the trust indenture above set out, "The Grimme Trust", "The Eger Trust", "The Hoersting Family Trust" and George A. Wimmer, an individual. Petitioner as "Manager" of the Schroer Trust devoted his time actively in carrying on the business of the alleged partnership, as did William P. Eger and Ralph E. Grimme as trustees of the Eger and Grimme trusts. They drew their compensation from the trusts They drew their compensation from the trusts for this service. George A. Wimmer also devoted his time to the "partnership" business. These four *82 "partnership" interests were designated "active partners" and by the "partnership agreement" were given from the earnings of the business an amount representing a fixed percentage on certain sales. The remaining earnings, after these payments, were divided equally among the [*] partnership interests. This extra distribution of income was designated as "Allocation A Distribution". The Hoersting Family Trust did not participate in this distribution as it was classed as an "inactive partner" due to the fact that it was located in Dayton, Ohio, and its trustee. Albert Hoersting, was able to render only a limited service to the "partnership" business. Petitioner, in making his returns for 1940 and 1941, reported as salary received from the Schroer Trust $1,387.92 and $1,842.36, respectively. Respondent, in determining the deficiencies in question, has treated the "Allocation A Distribution" made in each year by the "partnership" to the trust as salary to petitioner. This distribution he has determined to be $4,222.28 for 1940 and $6,600.77 for 1941 and he has, in consequence, increased petitioner's reported salary income by $2,834.36 for 1940 and $4,758.41 for 1941. For 1940 petitioner *83 took credit on his return for an alleged long term capital loss of $175 by reason of the worthlessness of certain stock in Ohio Mines, Inc. In 1941, shortly before March 15, while preparing his return for the prior year, he telephoned a "young lad" he knew who was employed by a stock brokerage house and asked him what the stock was worth and was told that it was worthless. Opinion Respondent contends that under the facts disclosed the entire income of the Schroer Trust is taxable to petitioner whether we apply section 22(a), section 166 or section 167 of the Internal Revenue Code. We agree with respondent that the question of whether the trust income is taxable to petitioner is to be determined upon the terms of the trust instrument, construed in the setting of the circumstances surrounding its execution and actual operation. Helvering v. Clifford, 309 U.S. 331. The instrument here is scarcely intelligible in many of its provisions. By this document petitioner purports to create an irrevocable trust for a term of 25 years, the income of which is to be distributed to himself and his wife in equal proportions. The transfer is to a trustee, Ralph *84 E. Grimme. However, by the terms of the instrument, he provides for the appointment of himself as "General Manager" and in this character is empowered to, and actually did, take over possession and absolute control of the trust corpus, with power to sell and dispose of it as he sees fit, to invest and reinvest and have complete managerial powers. He has power to fix his compensation as General Manager and can appropriate to himself as much of the trust income as he sees fit for services rendered. Finally, he has made provision for the issuance by the trustee of $40,000 in bonds, secured by the trust corpus. These bonds are to be delivered to him to do with as he sees fit. For all we are advised the obligation evidenced by the bonds equals or exceeds in amount the value of the trust corpus. Petitioner testified that some book, which was neither identified nor put in evidence, recorded a distribution of trust income to his wife on December 31, 1940 of $6,365.66, the same amount reported by him on his return as received in that year from the trust. Although he was the one who would make such distribution he did not testify that one was actually made to or received by his wife. As for *85 1941, there is no evidence that any of the trust income was distributed to his wife although for that year he reported $10,133.01 in his individual return as received from that source, of which $1,842.36 was designated as salary and the balance, distributed trust income. Considering the facts that the other beneficiary of the trust was petitioner's wife and the absolute control of the corpus was retained by petitioner, together with the right of practical recapture of the value of the transferred property through a bond issue to be turned over to him, petitioner was no poorer by reason of the trust conveyance. He retained such a "bundle of rights" in the corpus and income of the trust as to constitute "a fair equivalent of what he previously had" - ownership. We think the evidence here justifies fully the same comment as was made by the court in Helvering v. Clifford, supra: So far as his dominion and control were concerned it seems clear that the trust did not effect any substantial change. In substance his control over the corpus was in all essential respects the same after the trust was created, as before. The wide powers which he retained included for all practical *86 purposes most of the control which he as an individual would have. There were, we may assume, exceptions, such as his disability to make a gift of the corpus to others during the term of the trust and to make loans to himself. But this dilution in his control would seem to be insignificant and immaterial, since control over investment remained. If it be said that such control is the type of dominion exercised by any trustee, the answer is simple. We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position. It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship respondent retained the substance of full enjoyment of all the rights which previously he had in the property. That might not be true if only strictly legal rights were considered. But when the benefits flowing *87 to him indirectly through the wife are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had. * * * We hold that under section 22(a), supra, the entire income of the trust inured to the benefit of and is taxable to the petitioner. This conclusion makes unnecessary a decision upon the issues as to sections 166 and 167, supra. Issue (b) needs little discussion. The rule is settled beyond dispute that a taxpayer is entitled to a loss deduction through property becoming worthless only for the year in which the property became worthless and this fact is established by some identifiable event. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398. Here the evidence is wholly insufficient to even establish worthlessness of the stock, much less that it became worthless in 1940. Petitioner merely shows that in 1941 he telephoned a "young lad" in a brokerage office who told him the stock was worthless. The qualifications of the "lad" to express an opinion on the value are not shown nor is there evidence as to when the stock became worthless if the fact of its worthlessness had been established. We affirm respondent *88 in the disallowance. Our decision on issue (a) makes moot issue (c). Having held that all of the income of the trust established by petitioner is taxable to him, it is not necessary to determine whether a portion of it might be considered as salary received from that source. The parties agree that if our decision in the related case of Cincinnati Stamping Co., Docket No. 4620, [4 TCM 806], should hold the petitioner there to be an association taxable as a corporation, the deficiencies here determined must be adjusted to compute the income of the trust from that source in the amount actually distributed to it instead of the amount distributable. Our decision in that case, (Memorandum Opinion entered July 25, 1945, [4 TCM 806]) having held that company to be an association under section 3797, I.R.C.
Decision will be entered under Rule 50.